EIFFERT et al. v. CRAPS et al.

(Circuit Court of Appeals, Fourth Circuit. October 4, 1893.)

No. 46.

1. EQUITY JURISDICTION—REMEDY AT LAW.

A bill to recover land, alleging that the same belonged to complainant's father, and was sold under a decree of the court of ordinary without jurisdiction of the subject-matter or of complainants, is not maintainable in equity, as it shows that the legal title has never been divested out of plaintiffs, and may therefore be enforced by action of ejectment. Hipp v. Babin, 19 How. 277, followed.

2. EQUITY—LACHES—WHAT CONSTITUTES.

One who relies for the recovery of lands on a fraud 40 years old must be held guilty of laches, when it appears that the fraud might have been discovered at any time after its perpetration by the inspection of a single deed, recorded where the record of title of the land was to be looked for, and that the original purchaser under the deed has been dead 12 years, and the land devised by his will sold in partition, and resold several times.

Appeal from the Circuit Court of the United States for the District of South Carolina.

In Equity. Suit by James J. Eiffert, John Jacob Eiffert, and Henry A Eiffert against Samuel P. Craps and others to set aside a deed, and recover lands. There was a decree dismissing the bill. Complainants appeal. Affirmed.

Statement by MORRIS, District Judge:

The complainants, alleging themselves to be children and heirs of John H. Eiffert, on April 9, 1890, filed their bill of complaint, in equity, to set aside a deed charged to be fraudulent, and to recover possession of about 90 acres of land in Lexington district, in South Carolina. They allege that their father, John H. Eiffert, being in possession and seised in fee of the land, died prior to 1850, the complainants being then from 6 to 12 years old; that they were taken by their mother to the far west, and have ever since resided out of the state; that about 1850 one Mitchell administered on the estate of their father, and, by collusion and fraudulent contrivance with one Henry Craps, pretended to procure an order of the court of ordinary of the district, for the sale of the land, and had the land sold by the sheriff, and by collusion and fraud turned the land over to Henry Craps, who took possession, and continued in possession until his death, in 1878; that the fraud was perpetrated by Henry Craps falsely representing to the court of ordinary that he was one of the heirs and distributees of their father, and petitioning the court to sell the land for partition; that after Henry Craps' death, in 1878, the land remained in possession of the devisees under his will, until, under a decree for partition, it was sold in 1883 to one of his daughters, who has since sold it in parcels to the other defendants, who are now in possession; that all the devisees of Henry Craps, and their grantees, the defendants, have had full knowledge of the fraudulent character of Henry Craps' title. They allege that the deed from the sheriff to Mitchell in 1850 is void, and passed no title, because, if a sale was really ever decreed by the court of ordinary, that court was without jurisdiction to order a sale, both because Craps was

not an heir of John H. Eiffert, and because no notice, by advertisement or otherwise, was served on the complainants. As the reason why complainants have been prevented from sooner asserting their rights, they allege that about 1856 the complainant John Henry Eiffert returned to South Carolina, and inquired of Mitchell about their father's land, and was informed by him that it had been sold for debt by the sheriff of Lexington district; that the fraud has only quite recently come to their knowledge, having been fraudulently concealed from them; and that, since they have learned of the fraud, one of the complainants has visited South Carolina, and seen the old people who might have knowledge of the matters, and has examined the records in the clerk's office. The bill prays that the deed from the sheriff to Mitchell may be set aside, and declared void; that the title be declared vested in the complainants; that an account of rents be taken, and a writ of possession granted.

The defendants answered, denying the alleged frauds, and claiming to be innocent purchasers for value. They pleaded the statute of limitations, and the laches of the complainants in asserting their claim of title, and that the complainants have an adequate remedy at law.

The bill coming on to be heard, the court (Judge Simonton) held that it appeared from the allegations of the bill that the complainants had a plain, adequate, and complete remedy at law, and dismissed the bill. The court, as appears from its opinion, proceeded upon the ground that as it was alleged that the court of ordinary was without jurisdiction of the subject-matter, and its order of sale was unauthorized by law, and none of the heirs of Eiffert were parties to the proceeding, or bound by the order, and therefore, as alleged, that the title to the land had never been divested out of them, the case was, in fact, an attempt to enforce a merely legal title by a bill in chancery, instead of by action or ejectment. The court cited Hipp v. Babin, 19 How. 277, as controlling authority that such a bill must be dismissed.

G. T. Graham, J. C. Blair, and F. C. Blair, for appellants.

Before GOFF, Circuit Judge, and HUGHES and MORRIS, District Judges.

MORRIS, District Judge, after stating the case as above, delivered the opinion of the court.

In the case of Hipp v. Babin, 19 How. 271, cited in his opinion by the learned judge of the court below, the children of a testator filed a bill in equity to recover possession of lands of their father, which had been sold by his executrix during their minority by virtue of an order of court empowering her to make the sale. The complainants relied upon the invalidity of that order, and the consequent nullity of the sale. The supreme court held that the remedy at law, by ejectment, was plain, adequate, and complete, and that the bill in equity was rightly dismissed. It was held, also, in Phelps v. Harris, 101 U. S. 375, that, if a deed is invalid upon its face, it is to be repelled by an action at law, and not in equity.

But the complainants in the present case allege, and assign as error in the decree dismissing their bill, that there is also a matter extrinsic the deed itself, or the proceedings in the court of ordinary, viz. the fraud of representing to the court that Craps was an heir and distributee of their father, which gives a court of equity jurisdiction to set aside the deed procured through the fraud. The defendants have set up as a defense the complainants' laches, and the staleness of their claim. If, therefore, it be conceded that their allegations of fraud do make a proper case of equity jurisdiction, it is necessary to examine the bill to see how the complainants ac-

count for the long delay from 1851 to 1890, a period of 39 years, and what it is they aver has prevented them from earlier asserting their claim of title. According to the statement of the bill, the youngest of the complainants must have arrived at 21 years of age in 1866. The bill states that the complainant John Henry Eiffert came to South Carolina, in 1856, to inquire about this land, and was told by Mitchell that it had been sold by the sheriff for debt. He appears to have made no inquiry as to what had become of the proceeds, how it had been sold, or who was in possession. The deed from the sheriff to Mitchell was then on record, the first line of which begins with the recital:

"Whereas, Henry Craps, one of the heirs and distributees of John H. Eiffert, deceased, filed a petition in the court of ordinary," etc.

All that is alleged in the bill could have been learned in 1856, by the examination of one recorded deed, and by asking who was in possession of the property. The averment of the bill is that:

"Some time last fall, your orators were put upon the track of these frauds, and since that time one of them, at much expense, has visited different places in South Carolina, saw the old people who might have knowledge of the matter, examined the records of the clerk's office, and, by all diligence, have sought to acquire the information contained in this bill. They submit that no laches or imputation of negligence in asserting their claim can be charged against them, as the whole transaction was fraudulently concealed from them."

The only concealment averred is that Mitchell stated in 1856 that the land had been sold for debt. The only allegation which contradicts the statement said to have been made by Mitchell is the recital in the sheriff's deed, and that deed was just as open to inspection in a public record in 1856 as it was 34 years afterwards, in 1890. After so great a lapse of time, after the original purchaser has been dead 12 years, and the land, by a decree for the partition of the estate devised by his will, has been sold at public sale, and resold several times, it is too late to rely upon a fraud 40 years old, which could have been discovered as soon as it was perpetrated, by the inspection of a deed recorded where the record title to the land was to be looked for. In denying relief in the case of Norris v. Haggin, 136 U. S. 392, 10 Sup. Ct. Rep. 942, the supreme court said:

"It is a part of this general doctrine that to avoid the lapse of time, or statute of limitations, the fraud must have been one which was concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment. Neither of these principles can apply to the defendants in this case. The acts which constituted the fraud, as alleged in the bill, were open and public acts. The note and mortgage were recorded in the proper public office of the proper county. The possession of defendants was obtained by judicial proceedings, which were open to everybody's examination, and which were probably well known in the entire community."

The salutary rule of courts of equity for discouraging antiquated demands requires that the bill shall set forth why the complainant has remained so long ignorant of his rights, and if his averments show that he could have learned his rights at any time, if he had

chosen to inquire, or to examine a public record, his bill is to be dismissed. Badger v. Badger, 2 Wall. 95; Marsh v. Whitmore, 21 Wall. 185; Brown v. County of Buena Vista, 95 U. S. 157; Naddo v. Bardon, 2 C. C. A. 335, 51 Fed. Rep. 493. In Stearns v. Page, 7 How. 829, it was said by the supreme court:

"And especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made."

See, also, Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. Rep. 418, and Pearsall v. Smith, 149 U. S. 231, 13 Sup. Ct. Rep. 833.

Considering how easily all the facts alleged in the bill could have been discovered at any time since March, 1851, when the sheriff's deed was recorded, it cannot be said that ordinary diligence has been exercised; and considering that Henry Craps resided on the property for 27 years,—until his death, in 1878,—and the changes and the sales of the property since that date, it is clear that the time for the complainants to have attacked the sheriff's deed was certainly not later than during the 27 years which Henry Craps lived after he took possession, and that they have stated no fact sufficient to relieve them of the imputation of laches.

Our conclusion is that the circuit court was right in dismissing the bill without prejudice to an action at law, and the decree is affirmed, with costs.