### In re GROSS.

(Circuit Court, E. D. Louisiana. January 12, 1897.)

1. SUBPŒNAS IN PENSION CASES—CONSTITUTIONAL LAW.
   The act of July 25, 1882 (22 Stat. 174), authorizing judges and clerks of United States courts to issue subpœnas, upon the application of the commissioner of pensions, for the examination of witnesses concerning pension claims, is constitutional, and under it the courts may compel witnesses to appear and testify before the officers mentioned in the act, on the subject of pension claims. Commerce Commission v. Brimson, 14 Sup. Ct. 1125, 154 U. S. 447, followed.

2. SAME.
   While the investigations under said act need not be confined strictly to the merits of pension claims, yet they must be upon the subject of pension claims; and a subpœna issued under the act should be drawn with such certainty and precision as to show that it is within the act, and to identify the pension claim in which the testimony is required.

Benj. Armbruster, for Josiah Gross.
D. C. Mellen, Asst. U. S. Atty.

PARLANGE, District Judge. The clerk of this court received the following application:

"Department of the Interior. Bureau of Pensions.

"Washington, December 14, 1896.

"To Any Judge or Clerk of Any Court of the United States Having Jurisdiction—Sir: In pursuance of sections 184, 185, and 186 of the Revised Statutes, and the act of July 25, 1882, I have the honor to request that a subpœna may issue, commanding Josiah Gross, of New Orleans, La., to appear at the time and place named therein, and make true answers to such written interrogatories and cross-interrogatories as may be submitted to him by Mr. J. F. Fitzpatrick, a special examiner of this bureau, and be orally examined and cross-examined on the matter of certain charges made against him in connection with his prosecution of claims before the pension bureau.

"Very respectfully,                    D. I. Murphy, Commissioner."

The clerk issued a subpœna to Josiah Gross, commanding him to appear before William Wright, United States commissioner for this court, to testify "in the matter of the pension claims of Celestine Washington, No. 641,346, and others." Gross appeared before Com-

missioner Wright, and was there asked whether he had signed any of the papers in the pension case of one Samuel Arsonaux. He refused to answer. He was then asked whether he had signed any of the papers in the case of Celestine Washington. He again refused to answer. The district attorney then proceeded by rule in this court, and asked that Gross show cause why he should not answer the interrogatories, or be held in contempt of this court.

I understand Gross' objections to be: (1) That the act of July 25, 1882 (22 Stat. 174), is unconstitutional, for the reason that congress has no authority to employ the courts to obtain evidence for the executive departments; (2) that, even if the act is constitutional, the testimony which may be required under it must be confined to the "merits" of pension claims, and that the questions propounded to him did not concern the "merits" of the claims. He urges that their sole purpose was to discover whether any relation or connection existed between him and certain pension attorneys, with a view to the disbarment of those attorneys. I do not understand respondent to plead that his answers would incriminate him. On the contrary, he states in his brief that he has nothing to conceal. Therefore, the question whether a witness can be compelled to incriminate himself in proceedings under section 184 et seq., Rev. St., and the act of July 25, 1882, is not before me.

Section 184, Rev. St., reads as follows:

"Sec. 184. Any head of a department in which a claim against the United States is properly pending, may apply to any judge or clerk of any court of the United States, in any state, district or territory, to issue a subpœna for a witness being within the jurisdiction of the court, to appear at a time and place in the subpœna stated, before any officer authorized to take depositions to be used in the courts of the United States, there to give full and true answers to such written interrogatories and cross-interrogatories as may be submitted with the application, or to be orally examined and cross-examined upon the subject of such claim."

Section 3 of the act of July 25, 1882 (22 Stat. 174), reads as follows:

"That in addition to the authority conferred by section one hundred and eighty-four, title four of the Revised Statutes, any judge or clerk of any court of the United States, in any state, district or territory, shall have power, upon the application of the commissioner of pensions, to issue a subpœna for a witness, being within the jurisdiction of such court, to appear, at a time and place in the subpœna stated, before any officer authorized to take depositions to be used in the courts of the United States, or before any officer, clerk, or person from the pension bureau designated or detailed to investigate or examine into the merits of any pension claim and authorized by law to administer oaths and take affidavits in such investigation or examination, there to give full and true answers to such written interrogatories and cross interrogatories as may be propounded, or to be orally examined and cross examined upon the subject of such claims."

Judge Benedict, in Re McLean, 37 Fed. 648, held the act of July 25, 1882, to be null, substantially on the ground that the federal courts could subpœna witnesses only in cases pending in those courts; that the investigations contemplated by the act of July 25, 1882, were not cases in the courts, and that congress could not permit the judicial power to be invoked in aid of an executive examination before an executive department. Judge Benedict cited

In re Railway Commission, 32 Fed. 241, in which Justice Field had held substantially that the judicial power of the United States is limited to "cases" in the courts, and that congress cannot make the courts its instruments in conducting mere legislative examinations. Subsequently, Judge Gresham held, in Re Interstate Commerce Commission, 53 Fed. 476, that so much of the interstate commerce act as authorized circuit courts to enforce subpœnas issued by the commission was unconstitutional. But Judge Gresham's decision was reversed by the supreme court (Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125), the court holding that the application of the commission to the circuit court to enforce obedience to its subpœnas was a "case" to which the judicial power of the United States extended. The principles upon which the decision in the Brimson Case is grounded are plainly applicable to the act of July 25, 1882, which is now before me. There can be no differentiation between the power of the courts to enforce the subpœnas issued by the interstate commerce commission and their power to enforce the subpœnas applied for by the pension bureau. It is plain to me, in the light of the Brimson Case, that the act of July 25, 1882, is constitutional, and that under it the courts may compel witnesses to appear and testify before the officers mentioned in the act, on the subject of pension claims. I repeat that the question whether witnesses can be compelled to incriminate themselves under the act of July 25, 1882, when their only protection in so doing would be section 860, Rev. St., is not now before me for decision.

Respondent's objection that the investigations under the act of July 25, 1882, must be confined to the "merits" of pension claims, is not borne out by that statute. It is noticeable, however, that both section 184, Rev. St., and the act of July 25, 1882, provide only for investigations "upon the subject" of the claims. While this language is not as restrictive as respondent contends, yet it is clear that congress intended to limit the scope of the investigations, and that an examination which would not be "upon the subject" of a pension claim would not be within the purview of the act. It seems to me that the application for a subpœna under the act should be drawn with reasonable certainty and precision, so that it should clearly appear upon its face to be in accordance with the act, and the pension claims in which the testimony is required should be reasonably identified. The application in this matter does not require the testimony of the respondent on the subject of any pension claim, nor does it mention any special pension claim concerning which he is to testify. But upon its face it declares that his testimony is required "on the matter of certain charges made against him in connection with his prosecution of claims before the pension bureau." On its face, then, the application shows that the primary subject of the investigation is not a pension claim, but certain charges of malpractice before the pension bureau. Doubtless, upon a proper application, the pension officers may—pretermitting the question of self-incrimination —obtain the testimony of witnesses under the act of July 25, 1882, as to all their acts affecting the claim in a pension case, and in that

way the pension officers may ascertain whether malpractice affecting the claim has been committed. But it seems to me this should be done as an incident to an investigation having primarily in view the "subject" of the claim. The application, in such a matter as this, may be considered as the foundation of the proceeding, and the subpœna issued under it should follow the requirement of the application. It is noticeable that, while the application in this matter requires respondent's testimony "on the matter of certain charges made against him in connection with his prosecution of claims before the pension bureau," the subpœna requires respondent to testify "in the matter of the pension claim of Celestine Washington, No. 641,346, and others." For aught that appears, the subpœna is not the one applied for by the commissioner of pensions. There is nothing of record to connect the subpœna with the application. How and from whom information was had as to the requirement of respondent's testimony in the cases of "Celestine Washington and others" does not appear; and it is not claimed that any one had the power to explain, modify, or supplement the application of the commissioner of pensions.

While I am clear that the act of July 25, 1882, is constitutional, I am equally clear that its provisions should be followed with reasonable strictness, and that, through failure to do so in this matter, the application and the warrant before me are void, and the respondent should be discharged from the rule.