CALLAN, Appellant, v. CALLAN.

Division Two, June 9, 1903.

Limitations: PURCHASE OF LANDS: POSSESSING MEANS OF DISCOVERY. A brother, in the process of settlement of litigation growing out of his father's will, offered to his sister sixty acres of land in lieu of all her interests in the estate, and represented to her that it was worth $6,000, whereas in fact it was worth only $900, and in this representation he was fortified by the assurances of the priest, concerning whom she was taught to believe that whatever he told her was true. She was inexperienced, knew nothing of the value of land in general or of this tract in particular, and being inexperienced and not on equal footing with her brother, who was well acquainted with the value of the land and of her interest in the estate, and relying on his representations and those of the priest, she accepted the deed, and more than five years afterwards brought suit for damages, alleging that she did not discover the fraud until a short time previously. *Held*, that she was in possession of the

Callan v. Callan.

means of discovering the fraud from the time she accepted the deed, and did not use them, and the concealment of the facts by her brother by mere silence was not enough to bar the running of the statute. The petition in such case must charge and the evidence show that it was by reason of something the brother did or said that the discovery of the fraud, if there was one, was not made sooner.

Appeal from Barry Circuit Court. — *Hon. Henry C. Pepper,* Judge.

AFFIRMED.

*A. D. Darrock, A. P. Tatlow* and *O. T. Hamlin* for appellant.

(1) In an action to recover damages for false and fraudulent representation, the intentional deceit is necessary to be found. But this appears from knowingly misstating a material fact, knowing that it was acted on from a belief in its truth, without any fault or negligence on the part of the person so acting. The known falsity of a representation is strong evidence of a purpose to practice a fraud. Brookin v. Shinn, 25 Mo. App. 277; Jollifee v. Collins, 21 Mo. 342; Peers v. Davis, Admr., 29 Mo. 189. The general rule is that when parties are on an equal footing, representations and exaggerations of the value of property will not be considered fraudulent. But, if from the character, situation, or surroundings of the thing traded for, one party is compelled to trust to the representations of the other, and reposing special confidence in him for that purpose, relies on his proffered representation, being precluded from the situation of the property from giving it his personal observation, or from its character, being unable to judge of it, the law will protect him in the trust he reposes in the opposite party. Cahn v. Reid and Bungardt, 18 Mo. App. 115; Chase v. Rusk, 90 Mo. App. 25; Glasscock v. Minor, 11 Mo. 655; Teachout v. Van Hosen, 1 L. R. A. 666; Owens v. Rector,

44 Mo. 392; Shinnabarger v. Shelton & Lane, 41 Mo. App. 155. (2) The rule that in cases of fraud the statute of limitations begins to run only from the discovery of the fraud does not apply where the party affected by the fraud might, with ordinary diligence, have discovered it. But, the failure of such diligence may be excused where there exists some relation of trust and confidence between the party committing the fraud, and the party affected by it, rendering it a duty of the former to disclose to the latter the true state of the transaction, and where it appears that it was through confidence in the acts of the party who committed the fraud that the other was prevented from discovering it. Bank v. Harris, 118 Mass. 147; Bank v. Forster, 8 Watts 12; Wear v. Skinner, 46 Md. 257; Wilson v. Ivy, 32 Miss. 233; Buckner v. Calcote, 28 Miss. 432; Bigelow, Fr., 445; Way v. Cutting, 20 N. H. 187; Losch v. Pickett, 36 Kan. 216.

*Geo. Hubbert* for respondent.

(1) It may suffice to suggest (without regard to the fact that appellant's testimony shows full knowledge of the facts and that she even instituted a suit to set aside her conveyance to respondent soon after the transaction) the bar of the five-year limitation statute stands effectually in her way, notwithstanding her alleged ignorance of the alleged fraud for over five years. Shelby v. Bragg, 135 Mo. 300. Here there was no exercise of diligence or use of the means of discovery by appellant. Nor, in fact, any concealment by respondent. The petition is fatally defective and the evidence is insufficient to make a case if the petition were sufficient. Wood v. Carpenter, 101 U. S. 135; Buckner v. Calcate, 28 Miss. 596; Wood, Lim., sec. 276. "There must have been some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the

plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have reasonable knowledge of it," said the court in McKneeley v. Terry, 61 Ark. 521, citing: Busw. Lim., sec. 385; Story, Eq., sec. 152; Piper v. Hoard, 65 How. Pr. (N. Y.) 228; Underhill v. Ins. Co., 67 Ala. 45; Ramsey v. Quillen, 5 Lea (Tenn.) 184; Adams v. Inhabitants Ipswich, 116 Mass. 570; Wood v. Carpenter, 101 U.S. 135; Tyler v. Angeoine, 15 Blatchf. (U. S.) 541; Eiffert v. Craps, 7 C. C. A. 319; 58 Fed. 470; Ware v. Galveston, 146 U. S. 116; Felix v. Patrick, 145 U. S. 332; Hardt v. Heidweyer, 152 U. S. 559; DeMares v. Gilpin, 15 Colo. 48; 24 Pac. 571; Underhill v. The Mobile Co., 67 Ala. 51; Walker v. Soul, 138 Mo. 570. (2) But there is no original cause of action shown—no facts constituting such cause. Representations and statements as to value of property are matters of opinion, and not to be relied on by purchasers and, though false, they afford no ground for action. Homer v. Perkins, 124 Mass. 431; Anderson v. McPike, 86 Mo. 300; Franklin v. Holle, 7 Mo. App. 245; Dawson v. Graham, 48 Iowa 378; Graffenstein v. Epstein, 23 Kas. 443; 33 Am. Rep. 171; Ellis v. Andrews, 56 N. Y. 83; 15 Am. Rep. 379; Parker v. Moulton, 114 Mass. 99; 19 Am. Rep. 315; Shade v. Creviston, 93 Ind. 591; Williams v. McFadden (Fla.), 1 So. Rep. 618; Crysler v. Canaday, 90 N. Y. 272; 43 Am. Rep. 166; McComos v. Haas, 93 Ind. 276. Or if one rely on the representations of facts not calculated to impose on men of ordinary prudence, or neglect to employ means of information easily reached for ascertaining the truth, the representations give no cause of action, however false. Brauckman v. Leighton, 60 Mo. App. 43; Hitchcock v. Baugham, 36 Mo. App. 222; Dunn v. White, 63 Mo. 185; Langdon v. Green, 49 Mo. 363; Mamlock v. Fairbanks, 46 Wis. 415; 1 N. W. 127; Lewis v. Land Co., 124 Mo. 687. "A false assertion of value, when no warranty is intended, is not ground of relief

to a purchaser. The assertion is a matter of opinion, which does not imply knowledge, and in which men may differ. Every person reposes at his peril in the opinion of others, when he has equal opportunity to form and exercise his own judgment. And. Dict. Law, p. 198; 2 Kent Com., 485; Gordon v. Parmelee, 2 Allen 214; Hull v. Field, 76 Va. 605: "The law recognizes the fact that men will naturally overstate the value and qualities of the article which they have to sell." Kimball v. Bangs, 144 Mass. 323; 11 N. E. 113; Dunn v. White, 63 Mo. 185; Isaacs v. Skrainka, 95 Mo. 524; Tootle v. Lysaght, 65 Mo. App. 141; Wannell v. Keren, 57 Mo. 489; Bailey v. Smock, 61 Mo. 217; Dunn v. White, 63 Mo. 181. They must also have been relied upon, and the transaction must have rested solely on the faith of them, and as to this the burden is on plaintiff. Bryan v. Hitchcock, 43 Mo. 527; Parker v. Marquis, 64 Mo. 38; Ninnan v. Oberle, 90 Mo. 666.

BURGESS, J.—This is an action for five thousand five hundred dollars damages alleged to have been sustained by plaintiff by reason of fraud and deceit practiced upon her by defendant, in the procurement of a deed from her and inducing her to accept from him a conveyance of sixty acres of land of an inadequate and misrepresented value. The transaction out of which this litigation grew took place on the third day of October, 1893. This suit was begun on the 17th day of January, 1899.

The petition, leaving off the formal parts, is as follows:

"Plaintiff states that she and defendant are brother and sister, and that they are the sole and only heirs of James Callan, deceased; that their mother's name was Hannah Callan and that she is also dead. Plaintiff further states that James Callan died seized of the following described real estate in Barry county, Missouri, to-wit," describing it. "Plaintiff further states

that prior to the death of her mother, Hannah Callan, she, said Hannah Callan, for a valuable consideration, by a proper deed of conveyance, granted, bargained, and sold to this plaintiff all her estate, whether real, personal or mixed, reserving to herself only a life estate therein; and that the said Hannah Callan afterwards departed this life on the ——day of——, 1897, and this plaintiff would now be the true and rightful owner of all property of the estate of Hannah Callan, deceased, except for the reasons hereinafter stated. That on the 3d day of October, 1893, this defendant offered this plaintiff a deed to sixty acres of land which he represented to be worth six thousand dollars, for her interest in her father's real estate, and this plaintiff believing and relying upon the statement of her brother as to the value of the land agreed to and did accept sixty acres for her interest in the real estate of James Callan's estate. That she signed the deed presented to her believing that she was only relinquishing her interest in her father's real estate and that the consideration for said deed from her to her brother was six thousand dollars, and the deed to the sixty acres to her from her brother the same, and that the representations made to her by her brother as to the value of the sixty acres were true. But she has since learned the fact to be that said sixty acres are not worth and were not at the time worth over the sum of five hundred dollars, and that the representations made to her by defendant were false and known to be so by him at the time and made for the purpose of deceiving and defrauding her; that the interest conveyed by her to her brother she has since learned included the property she obtained from her mother, Hannah Callan, and that it was all reasonably worth the sum of six thousand dollars; that all that this plaintiff ever received from said brother in return for said interest and property aforesaid, was said sixty acres of land aforesaid, which is not worth over the sum of five hundred dollars,

though represented to her by the defendant at the time to be worth six thousand dollars; that this plaintiff did not know any difference as to the misrepresentations aforesaid as to the said value until September, 1898. Wherefore, plaintiff says that by means of said unlawful and fraudulent representations as aforesaid so made by the defendant as aforesaid and known by the defendant to be false at the time he made them, this plaintiff has been cheated and defrauded out of her property and that she has been damaged by reason of which in the sum of five thousand five hundred dollars, for which she asks judgment with interest at six per cent per annum from October 3, 1893, and costs of suit."

Defendant answered denying all the allegations in the petition except that it admits that the parties hereto are brother and sister, and children of James Callan and Hannah Callan, both of whom are dead, and defendant admits that James Callan died seized (or possessed, but avers that he was legal owner in part only, an equitable owner in part, and only possessor in part, but not seized altogether) of the legal title to the land described in said petition; but in and to which defendant avers he had equitable rights and interests and all of which became his at his father's death (to the full extent of his father's rights, interests and estates, saving only his mother's rights and interests therein under the law) by reason and by virtue of his father's will as duly probated October 17, 1892; and defendant admits that plaintiff did receive and accept from defendant by quitclaim deed the sixty acres of said estate mentioned in said petition, and that she, in turn, also by quitclaim, deeded to him all of her right, claim and interest in and to the remainder of said land, October 3, 1893. It then proceeded as follows:

"Defendant avers that previous to said deeds and conveyances plaintiff had unjustly, as heir to her deceased father and grantee of her then surviving mother,

Hannah Callan, set up pretended claims to rights, interests and estates in and to all the said lands, then known as the James Callan estate, and had also instituted against him a statutory contest of their father's said will, and that said deeds and conveyances between the parties hereto were made under and solely in pursuance of a compromise agreement, which was entered by defendant for considerations of family peace and harmony, and which was mutually made between them in the circumstances aforesaid, by and according to which said agreement plaintiff undertook to and did by said quitclaim deed, convey, abandon and relinquish to defendant all of the said lands (saving only as to the sixty acres taken by her as herein mentioned) and also all her right of contest as to the said will; and defendant also undertook to and did, in pursuance of said agreement, pay costs accrued in the said contest case and convey by his quitclaim deed to her sixty acres of the said James Callan estate as described in plaintiff's petition.

"Defendant further says that soon after said agreement and quitclaim conveyance, all as set out above in this answer, plaintiff pretended to have discovered that she had been defrauded and forbade and refused dismissal of said contest proceeding, and she elected and did proceed by action and sued defendant at equity by petition in this court, to rescind and cancel said compromise, which said petition was filed and then served on defendant with summons duly issued thereon March 1, 1894; and thereupon defendant offered to concur in rescinding and setting aside the said agreement and cancelling said conveyances by mutual consent, and to allow the said contest to proceed in due form, but which offer she failed and refused to accept, although said contest did proceed at plaintiff's suit in disregard of her said agreement, and final judgment was entered therein sustaining said will in the defend-

Vol 175 mo—23

ant's favor as to all of said land in the circuit court of Lawrence county, to which court plaintiff had caused the venue of said suit and contest to be changed; and thereupon plaintiff with her attorney and counsellor at law abandoned her said equity suit, and retained the said acres of land so received as aforesaid under said compromise agreement and sold and conveyed a part thereof to a third person, and often expressed herself as altogether satisfied with said compromise and with what she had received as aforesaid from defendant, by all of which acts and conduct as aforesaid, plaintiff fraudulently led defendant to believe, and he did believe, that she was satisfied in all respects and had no further claim or pretense against defendant on account of said agreement or conveyances or against any part of the said land or the value or proceeds thereof, or damages for any supposed deceit or fraud on his part, except as to the sixty acres so conveyed by him to her as aforesaid, and he was also induced by said belief so produced as aforesaid to refrain, and he did refrain, from proceeding, as he might and otherwise would, by action against the plaintiff to regain the said sixty acres and cancel the election and deed of conveyance of Hannah Callan, herein mentioned as in favor of plaintiff, because of her failure to give and yield the agreed consideration on her part by abandonment and dismissal of her contest concerning said will and abandonment of all claim to remainder of said land as agreed as aforesaid, and from proceeding as he might and otherwise would have done, to have all color and shadow of her claim against any of said land, and particularly said sixty acres, removed, as being wrongful and against the defendant's rights as set out in this answer; and he was also induced by his said belief, so fraudulently brought about by the plaintiff as aforesaid, to do as he otherwise would not have done and assume and pay and discharge valid debts of the said James Callan, and costs of the execution of his said will, and

administration of the said estate, to the amount of one thousand dollars, which otherwise was and would have been enforcible as charges and liens against all of said lands, inclusive of said sixty-acre tract; and plaintiff has received and accepted from defendant the one hundred dollars bequeathed to her by the terms of the aforesaid will; by all of which facts the plaintiff is estopped to maintain this action.

"Defendant further says that no cause of action has arisen or accrued to plaintiff by reason of any fact or facts averred in plaintiff's petition within the five years next preceding the bringing of this action by original petition, January 17, 1899, but that each and every supposed cause of action in plaintiff's favor in her petition are and stand barred by the statute of limitations in such cases provided.

"Defendant further says that the aforesaid Hannah Callan, as widow of the aforesaid James Callan, deceased, took and had under the law and according to the terms of the said will, what and only the statute provides for such widow, being an interest for life only in the lands constituting the James Callan estate only as aforesaid; that she was at all the times hereinafter mentioned with relation to her acts and deeds, *non compos mentis,* wholly imbecile by reason of her powers of mind and memory having deteriorated and failed her, so that she was not at any time capable of comprehending or understanding the matters of business concerning which her acts or deeds were had, done or performed; that while in such condition of mind and memory as aforesaid, she did, under the fraudulent advice and dictation of the plaintiff herein, for plaintiff's own ends and purposes, actually sign and acknowledge, as a land deed of conveyance, an election, as widow of the said deceased Jas. Callan, to take in lieu of dower, etc., for life, a child's part of her husband's lands subject to his debts ( a copy of which is hereto annexed as Exhibit A) and the same was filed and recorded at page

300 of book 51 in the office of the recorder of deeds of said county, February 2, 1893; and thereafter, while in the same condition of mind and memory as afore-said, the said Hannah Callan did sign and acknowledge the deed of conveyance mentioned in the plaintiff's petition of date of May 13, 1893 (a copy of which is hereto annexed, 'Exhibit B') which was the same day filed for record, and is found at page 444 of book 51, of deed records in the recorder's office of the said county, whereby there is purported to be sold and conveyed to the plaintiff the remainder in fee, after the widow's life estate, in and of all the lands described in plaintiff's petition, which said deed was procured to be so signed, acknowledged and recorded as aforesaid by the plaintiff, by virtue and consequence of her fraudulent advice, influence and dictation to her said mother, Hannah Callan, for her own uses and purposes and to the end that she might set up unjust and fraudulent claims to title to the child's interest and estate (of one-third of the remainder in fee) in said lands purporting by the aforesaid election to have been acquired by the said election under the statute; that all of the said acts and deeds of the said Hannah Callan, viz., the said election to take a child's part and conveyance to plaintiff, were fraudulently contrived and brought about by the plaintiff through her undue influence over her mother, for her own benefit and in fraud of the defendant and his rights; that said election and deed as. made, filed and recorded as aforesaid, constitute an apparent and efficient incumbrance on and diminution of defendant's absolute fee estate in and title to said lands, though the same were in fact made and acknowledged by the said Hannah Callan as aforesaid, when she was incapable of understanding and she did not understand the business in hand, nor the legal effect or consequences of her acts, and when she did not and could not understandingly do or transact matters of business of such moment and importance, by reason of the utter unsoundness of her mind and memory, and her lack

of sufficient sense or reason, or mental capacity to reasonably understand the acts she was performing or to rationally comprehend the consequences to flow therefrom; that plaintiff had no other claim or title to any part of the lands released to defendant by her deed to him as aforesaid, than such as was derived through said election and deed by her mother, so made as aforesaid, each and both of which are and were fraudulent and void by reason of the facts aforesaid, so that she had no title to convey to the defendant and she conveyed no valuable title by her said deed, which was understood and designated by the parties hereto as a mere compromise quietus on her illegal claims, and the said deed did not and does not constitute any lawful or valuable consideration and is not sufficient in law to support any action by plaintiff for any substantial or other damages on account thereof.

"And defendant prays that the said election and deed, so made by Hannah Callan, as aforesaid, be held and declared void, and that the same be declared cancelled and have no legal or equitable effect upon the title, ownership or status of the real estate in question, and that plaintiff be adjudged to have suffered no damages nor given any consideration or support by her said quitclaim deed thereof to defendant for any demand herein for any damages on account of any rights alleged to be derived from her mother, and that defendant have all other and further relief in the premises."

Plaintiff filed reply to defendant's answer in which she denies that her cause of action did not accrue within five years next before the institution of this suit.

The cause was tried before the court and a jury, and at the close of plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which was given. Whereupon plaintiff took a nonsuit with leave to move to set the same aside, and such motion being made in due time and overruled, plaintiff saved her exceptions and appeals.

. The salient facts are about as follows:

The plaintiff and defendant were the only children of James and Hannah Callan. James died in 1892 and owned, at the time of his death, 520 acres of land adjoining the town of Monett; one hundred acres of it lying along the east line of said town and a portion of the south part adjoined a part of the town. Just before James Callan died he made a will in which he bequeathed to his wife just what the law would allow her as his widow; and to this plaintiff $100; and the remainder of all his property, real, personal, and mixed, to the defendant. Plaintiff and defendant were Catholics, and were taught to believe that whatever the priest would tell them would be true, and at that time belonged to Rev. Fr. Bernard Zell's parish in Monett. Ellen, prior to this time, had been working as a house servant away from home, principally in Wichita, Kansas. When she learned how her father had disposed of his property by his will she began a suit in Barry Circuit Court to set it aside and the case was set for trial October 4, 1893. Just after noon on October 3, Father Berbie (as he was called by plaintiff and defendant) came to the home of plaintiff and defendant and Hannah Callan, and sent out and had them (plaintiff and defendant) come to the house (they being out about the place) and told them that he had come to settle their litigation; that they must settle it and not give it all to the lawyers. John then suggested that Ellen take sixty acres (the land afterwards conveyed to her by John) telling her it had good timber on it and was worth $6,000, in full as her part of the James Callan estate. She wanted eighty acres next to Monett; he would not agree to that; then she said she would take eighty acres off the south end, and he objected to that, and said to her that the sixty acres he suggested with her mother's part which she already had, would make her equal with him in property. And Father Berbie told her that was true and that the representations made by

John as to the land were true and that for her to ask for more would be stealing. She then agreed to take the sixty acres offered by John, and then and there Father Berbie had her sign a paper agreeing to come to his parsonage that night and execute the proper deed of conveyance to John. She in company with John went as promised and in the presence of Father Berbie, John and the notary public, she conveyed all her interest in the James and Hannah Callan estate. The contract made between John and Ellen was that Ellen was to convey her interest in the James Callan estate only. Prior to that time Hannah Callan renunciated the will in writing and filed the same in the probate court of Barry county. After doing that she made a deed to Ellen conveying to her all her interest in the personal and real estate, reserving to herself a life estate only, reciting in the deed that she did so in order that justice might be done Ellen, and to prevent litigation with her son. Ellen had no experience in trading in real estate prior to this time and knew nothing of the value of land. She simply had a general idea that the closer to town the land was the more valuable it would be; but could not say what it was worth an acre. She continued to live with John until January, 1894. John was a practical farmer, lived on the farm continuously after his father purchased it, and well knew the value of it. The sixty acres is in the southeast corner of the farm and is unimproved and covered by scrubby timber, and was worth at that time about $15 per acre.

One of the questions presented on this appeal is as to whether or not this action was barred by the statute of limitations at the time of the institution of this suit on the 17th day of January, 1899. Section 6775, Revised Statutes 1889, provides that an action for relief on the ground of fraud shall be brought in five years, "the cause of action in such case to be deemed not to have accrued until the discovery by the ag-

grieved party, at any time within ten years, of the facts constituting the fraud.''

The fraud complained of is alleged in the petition to have occurred on the 3d day of October, 1893, while the suit was not begun until the 17th of January, 1899, over five years after the cause of action accrued, which was clearly barred by the statute of limitations at the time the suit was instituted unless the facts alleged in the petition bring it within the exception mentioned in the statute. Plaintiff contends, however, that the facts that she was inexperienced and not on an equal footing with the defendant, that she had confidence in his statements as well as the priest's, that she would not have known differently from a personal examination of the land, because she knew nothing about its value and an examination by her would have been fruitless, bring the case within the exception to the general rule, and that the action, because of these facts, was not barred by the statute of limitations at the time of the commencement of the suit.

These facts even if true do not of themselves bring the case within the exception, but there must have been some act done by defendant to lull plaintiff into non-action or to prevent her from discovering the fraud. She was in the possession of the means of discovery of the fraud from the very hour that the trade was consummated, and did not use them, and the concealment of them by the defendant by mere silence was not enough.

In Shelby County v. Bragg, 135 Mo. 1. c. 300, it was said:

''A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it. A party can not avail himself of this exception to the statute when the means of discovering the truth were within his power and were not used. Conceal-

ment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself.''

''If the aggrieved party knew of the fraud when it was committed, or had full possession of the means of detecting it, which is the same as knowledge, neglect to bring forward his complaint for more than six [five] years will deprive him of his remedy and ought to, upon the very principles and reasons upon which the statute of limitations was enacted.'' [Farnan v. Brooks, 9 Pick. 246.]

Indeed the authorities are all one way upon this question. [Wood on Limitations, sec. 276; McKneely v. Terry, 61 Ark. 527; Busw. Lim., sec. 385; Underhill v. Ins. Co., 67 Ala. 45; Ramsey v. Quillen, 5 Lea (Tenn.) 184; Adams v. Inhabitants of Ipswich, 116 Mass. 570; Tyler v. Angevine, 15 Blatchf. (U. S.) 536; Eiffert v. Craps, 58 Fed. 470.]

And ''the bill or complaint should set forth the nature of the transaction fully, and also the acts of concealment, and the time of its discovery . . . . The concealment contemplated by the statute is something more than mere silence; it must be of an affirmative character and must be alleged and proved so as to bring the case clearly within the meaning of the statute.'' [Wood on Limitations (3 Ed.), sec. 276.] The same rule is announced in Ware v. Galveston, 146 U. S. 116; Felix v. Patrick, 145 U. S. 317; Hardt v. Heidweyer, 152 U. S. 559.

While the petition alleges that the fraud complained of was not discovered by plaintiff until September, 1898, it does not allege what the discovery was, nor does the proof show that it was by reason of anything that defendant said or did that it was not discovered earlier.

Our conclusion is that the action was clearly barred

by the statute of limitations when commenced. The conclusion reached renders it unnecessary to pass upon the question of fraud.

The judgment is affirmed. All of this Division concur.