ROBERT POWELL, Respondent, v. WILLIAM W. WHITE, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. **STATUTE OF LIMITATIONS: Fraud.** Sec. 1889, R. S. Mo. 1909, bars an action based on fraud in five years, unless the fraud is secret and is not known to plaintiff, being kept from him by some act or artifice of the defendant. In such case, if the discovery is made at any time within ten years, then plaintiff has five years from the date of discovery within which to bring his action.

2. ———: ———: **Evidence.** Where the alleged representations complained of were as to the number of acres in a farm sold, and there is no evidence to show that plaintiff was prevented by defendant from ascertaining the true number of acres, but that on the contrary the plaintiff has as good opportunity for knowing the acreage as the defendant, and lived on the farm for ten years and could have discovered the alleged shortage in area at any time by looking at his tax receipt, a delay of nearly thirteen years in bringing suit is fatal to the action.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb*, Judge.

REVERSED.

*R. B. Caples* and *J. A. Collet* for appellant.

*Percival Birch* and *Williams & Williams* for respondent.

TRIMBLE, J.—This is an equity case to recover an excess payment to defendant for land alleged to have been purchased of him by plaintiff.

The ground of the amended petition on which this suit was tried was fraudulent representations as to the number of acres in the tract conveyed, though the original petition counted on mistake in that particular, and contained an allegation that defendant made said representations under a misapprehension of the facts and fully believing the tract contained the number of acres represented.

The shortage in the number of acres of which complaint is made was 16.13. The transfer in which the shortage occurred took place February 16, 1899, and the suit was not filed till October 18, 1911, more than twelve years later. To avoid the bar of the statute which would otherwise appear on the face of the petition there was an allegation that the shortage was not discovered until January 1, 1909, but there is no allegation in the petition as to why it was not discovered sooner, or as to anything defendant did which kept plaintiff from learning of it before.

A demurrer to the petition was overruled, and thereupon an answer was filed denying the representations, and pleading limitation. In fact, defendant denied making any trade whatever with plaintiff, his contention being that after repeated negotiations with plaintiff the proposed trade between them fell through and the deal that was made was with a Mr. Shackelford, who traded a farm near Glasgow, known as the Lewis farm to plaintiff for the latter's farm and a house and lot in Fayette, and induced a money-lending client of Shackelford's to take plaintiff's farm for the mortgage held by the client on defendant's farm, and then sold the last named farm to two men, one of them plaintiff and the other a man by the name of Tevis. Defendant claims that when deeds were to be made, Shackelford, to avoid having so many instruments drawn, had defendant to deed his farm direct to plaintiff and Tevis respectfully. And it was this deed to plaintiff on which the excess payment was made. There is evidence to sustain this view but as the court found for plaintiff it must have concluded that this was not the fact, and, as the evidence was *pro* and *con* on this point, we would defer to the opinion of the trial court thereon, if the case depended on this point only.

Defendant originally obtained his farm from his uncle, and took his word for the number of acres it contained, never having it surveyed.

The evidence shows that plaintiff lived not far from this farm for eighteen or twenty years; that he had known the farm and often went over it carefully, had the boundaries pointed out to him correctly, and that he, not defendant, was the moving party in endeavoring to obtain the trade. Plaintiff did not ask to have surveyed the portion coming to him in the deal, and the evidence is not very definite or precise as to what the representations were except that defendant said the farm had 16.13 more acres than it was afterwards found to contain. There is no evidence of

defendant making any positive assertion as a fact within his knowledge in such manner as to preclude or render unnecessary any survey or investigation to ascertain the number of acres; or, that it was a positive assurance as to the area made with a design to deceive; simply plaintiff's evidence that defendant said the farm contained a certain number of acres. As stated before, the original petition did not count on fraud but explicitly exonerated defendant of any such charge by stating that he made the statement fully believing it to be true. And the evidence seems to bear out this view as well or better than that of any intent to defraud. It is true there is evidence that after plaintiff had sold the farm to one Engle and he had discovered the shortage, and plaintiff complained thereof to defendant, the latter in attempting to account for the occurrence of any shortage, said his Uncle had sold thirteen or fifteen acres. But this sale was before defendant was born, and it was not shown that defendant knew, at the time he stated the number of acres, that these thirteen acres came out of the number of acres his uncle was supposed to deed to him. There were no declarations of law given, and it cannot therefore be determined just what view the trial court took of the facts necessary to constitute fraud as distinguished from mere mistake. However, since no declarations were asked by either party, we may assume that the court found there was fraudulent representations as to the number of acres. We merely remark that, as the evidence looks to us in cold print, it does not show fraud as clearly and certainly as it might, and leads one to believe that the statement in the original petition concerning mistake, and not fraud was in fact the correct view. Especially is this true when we remember that fraud cannot be presumed but must affirmatively appear from the preponderance of the evidence.

But aside from these questions, which are merely stated here in order to show that plaintiff's case is not as strong and clear as it ought to be, there is another matter which must be reckoned with. Defendant pleads the Statute of Limitations, and in this case, such plea is not so heartlessly technical or devoid of justice as it may appear to be, since by reason of the great lapse of time some of his witnesses are dead and the real facts cannot be shown so clearly as they otherwise could be.

This statute, section 1889, Revised Statutes of Missouri, 1909, bars an action for relief on the ground of fraud in five years, but provides that such action shall not be deemed to have accrued until the discovery of the facts constituting the fraud by the aggrieved party at any time within ten years. And the burden is on plaintiff, who denies that the action is barred, to show that it is not. [Central Bank v. Thayer, 184 Mo. 61; Callan v. Callan, 175 Mo. 346.]

Waiving plaintiff's rather vague testimony as to just when he discovered the alleged fraud, since we think there may be enough stated from which we can infer that it was within the ten years from February 16, 1899, though to do so we must accept indefinite statements made in answer to rather leading questions put to him, the question still remains as to whether, under the petition and evidence, plaintiff is not barred by the statute since there is no allegation nor proof of any diligence on the part of plaintiff to discover the alleged fraud and no proof that defendant did or said anything to prevent its discovery. Plaintiff as soon as he got his deed, or shortly thereafter, moved on the farm and lived there for ten years. During all this time he was in possession of ample means to discover the shortage in his farm. Year after year he paid the taxes thereon and filed his receipts away without looking at them, when, if he had done so, the shortage would have appeared. A shortage of 16.13

acres is not so small as to be wholly incapable of observation on the part of an experienced farmer who usually can tell something of the acreage contained within a given area. Whether this be true or not, the man he sold to discovered it the first time he went to pay his taxes; and he discovered the shortage and notified plaintiff thereof before having it surveyed. Nothing was done by defendant to prevent plaintiff from discovering it. It is held that where plaintiff is in possession of the means of discovery of the fraud from the time it was perpetrated and did not make use of such means, and nothing was done by defendant to prevent discovery, the statute begins to run from the date of the perpetration and not from the discovery. [Scott v. Boswell, 136 Mo. App. 601; Callan v. Callan, 175 Mo. 346, l. c. 360; Shelby County v. Bragg, 135 Mo. 291, l. c. 300; Wood v. Carpenter, 101 U. S. 135; Smith v. Bishop, 9 Vt. 110.] Such being the law plaintiff is not excused for waiting nearly thirteen years before bringing suit, since if any fraudulent representations were made, the statute began to run at once and the action was barred in five years. The judgment is reversed. All concur.