JOSEPH OBERMEYER, APPELLANT, v. C. H. KIRSHNER, RESPONDENT.—
38 S. W. (2d) 510.

Kansas City Court of Appeals. Opinion filed May 4, 1931.

*W. S. McClintock, A. L. Quant* and *F. K. Ferguson* for appellant.

*C. H. Kirshner, Theodore Remley* and *F. S. Stroheker* for respondent.

ARNOLD, J.—This is an action in conversion of money had and received. The suit was instituted on January 3, 1929, by a petition filed in the court of a justice of the peace in and for Blue Township, Jackson County, Missouri, where there was a judgment for plaintiff in the principal sum of $277.10, plus $102.50, interest and costs. There was a timely appeal by defendant to the circuit court of Jackson County at Independence.

The petition filed in the justice court alleged plaintiff sued defendant to recover $277, and interest from October 19, 1922, on account of money in said amount which, in fact, belonged to plaintiff and which defendant fraudulently concealed and kept until discovery thereof by plaintiff on or about January 1, 1928, when plaintiff demanded payment; that plaintiff has continuously demanded of defendant such money ever since said discovery, but defendant has refused to pay plaintiff; that defendant wrongfully received such money of plaintiff from a Mr. Tally, trustee of the Hull Copper Company. a corporation, in the liquidation of the company and was the distributive dividend of 1000 shares of the capital stock of said corporation, represented by certificate No. 5663, issued November 23, 1909, which certificate long prior to and on and ever since October,

1922, was the property and in the possession of plaintiff, but stood on the books of said corporation in the name of defendant, all of which at all times was known to defendant; and the defendant had no right to receive said liquidated dividend check from said trustee, and is wrongfully and unlawfully withholding same from plaintiff. The prayer is for judgment for $277 and interest thereon at six per cent per annum from October 19, 1922, and for costs.

The answer is a general denial and, for affirmative defense, alleges the claim of plaintiff set up in his statement is barred by the Statute of Limitations by virtue of Article 9, sections 1315, 1316, 1317 and 1318, Revised Statutes 1919. The cause was tried to a jury in the circuit court on February 13 and 14, 1930. After hearing the evidence on behalf of both plaintiff and defendant, the court directed a verdict for defendant; such verdict was returned and judgment accordingly entered. A motion for new trial was overruled and paintiff appeals.

It is disclosed by the record that plaintiff is a resident of the City of New York, an officer of Liebman Breweries, Inc.; that since 1917, he was a stockholder in the Hull Copper Company, an Arizona corporation. Prior to 1919, he was the owner of a large number of shares in said company which he tuned over for liquidation. Thereafter, in April, 1919, he purchased 5,000 additional shares which he did not turn over for this purpose. Among his holdings was a certificate bearing the number 5663 for 1000 shares in said company which he had purchased on the curb market in New York, about the year 1919. The said certificate was introduced in evidence. It was made out in the name of defendant, C. H. Kirshner, and bears his purported indorsement, both on the face and back thereof.

Defendant is a resident of Kansas City, Missouri, and is president of the Bankers Mortgage Company of said city. It further appears that in 1910, defendant was president of the Inland Securities Company, a Kansas City, Missouri, concern, which was later taken over, or absorbed, by the Bankers Mortgage Company. The record shows that one C. B. Stanton promoted the Hull Copper Company and that defendant financed him, in a way, through the Inland Securities Company. Stanton gave Hull Copper Company stock as security for these loans when made and for awhile this stock was held in the name of Thomas B. Job, assigned in blank; that thereafter the stock was transferred in the name of defendant, broken up in small certificates for Stanton's convenience, as he sold them. All of said stock was either put in defendant's name or in blank, the name to be inserted later on. None of the stock was put in the name of the corporation, Inland Securities Company. Defendant became associated with the Bankers Mortgage Company on January 1, 1921, but this company had no direct dealings with Stanton in relation to the Hull Copper Company, prior to that time; but the account was transferred

and carried in the Bankers Mortgage Company from that time on. To secure the mortgage company in the Stanton transactions, defendant held more than one million dollars, face value, of the Copper Company stock, worth from time to time one-half cent per share, and up. It appears that Stanton would borrow money and sometimes ask for stock to pledge as collateral elsewhere, when he would be given certificates for that purpose. He would go out and use these certificates as collateral, or sell them. These certificates, indorsed in blank by defendant, and the proceeds thereof went to Stanton for his own use. The Bankers Mortgage Company had an account on its books with the Hull Copper Company, October 16, 1922.

It appears the Hull Copper Company went into liquidation through a trustee; that in liquidating the company there was paid a dividend of 27.7 cents per share to the stockholders of record. The company liquidated September 2, 1922. The certificate here in controversy, to-wit, No. 5663, for 1000 shares, stood on the books of the Hull Copper Company in the name of defendant, C. H. Kirshner. On September 25, 1922, a dividend check for $277 was issued by the liquidating agent in favor of Kirshner, on the 1000 shares above referred to. The check was received at the office of the Bankers Mortgage Company and deposited in the bank to the credit of said company. Defendant testified he did not personally indorse the check; that the bookkeeper had authority to indorse his name on checks belonging to the Mortgage Company; that he (defendant) indorsed the particular certificate of stock in evidence, in 1910; that the check in question was the only dividend ever paid on that "piece of stock" that the mortgage company ever received; that defendant, personally, did not own any stock of the Hull Copper Company in his own right; that he only held it as collateral for advances made to Stanton; that he never bought any of it himself; that it was first held in favor of the Inland Securities Company and afterwards the Bankers Mortgage Company; none in his own favor; that his attention was called to the fact the check had been received as a dividend on the Hull Copper Company stock some days after it was received by the mortgage company; that he never saw the check; had no recollection of inquiring where it went; he would expect it to go to the Stanton account; that Stanton was never in the employ of the Bankers Mortgage Company and quit having dealings with that company after the liquidation of the Copper Company; that to the best of his recollection the check in question was not put to defendant's credit on his account with the mortgage company. A photostatic copy of the indorsements on the back of the check was accepted in evidence. It shows the name of defendant appears thereon following these words:

"Received the within check to cover distribution of capital assets of Hull Copper · Company from proceeds of sale of its properties

amounting to 27.7 cents per share upon the shares of stock of said company standing in the name of the payee. By his endorsement of this check certifies that on September 15, 1922, he was the owner or rightful holder of the shares of stock then standing in his name upon the books of Hull Copper Company; that he had not sold same prior to said date and that he is the person entitled to the distribution of capital assets of said company, provided for by within check."

There was also introduced in evidence a photostatic copy of the certificate of stock in conteroversy which shows the certificate was issued for 1000 shares of the capital stock of the Hull Copper Company on November 23, 1909, to C. H. Kirshner, and by him indorsed in blank on Jan. 21, 1910.

Plaintiff testified by deposition, of date May 9, 1929, he had been a stockholder in the Hull Copper Company since 1917; that his holdings therein varied. Prior to 1919, he was the owner of shares which he turned over for liquidation; that thereafter, in April, 1919, he purchased 5,000 additional shares which he did not turn over for liquidation; that among his holdings he was the owner of certificate No. 5663, of said company, for 1000 shares; that he bought it on the curb market in New York City about the year 1919; he produced the certificate; could not say what he paid for this stock, but that, during 1916 and 1917, he purchased over 30,000 shares of Hull Copper Company stock at prices varying from 16 to 36-3/4c per share. He testified that after receiving the certificate in question he did nothing toward having the ownership of it made a matter of record with the Hull Company; that the stock was not paying dividends and there was no immediate outlook for any, and it was not necessary for him, at the time, to have it transferred to his name, and it was never done. Further he testified that shortly after the certificate came into his possession the Hull Copper Company was not operating; that so far as he knew it had very little money in its treasury and was merely "wild cat;" that he regarded the investment as pure speculation. The next transaction he had with respect to this certificate was based upon a rumor he heard just prior to September 14, 1927, that the stock was of some value; that on said last named date he wrote Robert E. Tally trustee, inquiring if the rumor were true. Tally answered under date of October 8, 1927, enclosing a statement of liquidation dividends on stock therein listed, including certificate No. 5663, which he held, on which $277 had been paid C. H. Kirshner, the owner of record. Some of the checks had been returned with statements from those to whom they were sent that they no longer owned the stock; that Mr. Tally then sent him checks for the dividends on certificates owned by him, as included in a list; that in all other cases, among them the C. H. Kirshner check here in issue, checks were accepted by the owners of record; that he communicated

with these parties and found a number had gone out of business; the rest, with the exception of Mr. Kirshner, sent him their checks corresponding to the certificates held by plaintiff bearing their names.

There was also read in evidence the deposition of H. V. Young who testified the Hull Copper Company was an Arizona corporation; that witness became connected with it on March 21, 1919, as assistant secretary. The company existed until December 20, 1922, upon which date an order of dissolution was issued out of the Superior Court of Yarapi County, Arizona; witness was assistant secretary until the dissolution. He identified the certificate of stock No. 5663. According to the record this certificate was issued November 23, 1909, in exchange for 100 shares of Hull Copper Company, represented by certificate No. 5546, standing in the name of Thos. B. Job. Witness testified certificate No. 5663 was never presented for transfer on the books of the Hull Copper Company, and was not registered on the books of that company in the name of any other holder than C. H. Kirshner; that the Hull Copper Company sold all its property on September 2, 1922, and distributed its net capital assets to its stockholders of record under date of September 25, 1922, paying its stockholders 27.7 cents for each share of stock held; that the dividend checks were sent by registered mail accompanied by printed circular letter. The letter was produced in evidence.

Witness testified he sent distribution check No. 1425 for $277, to C. H. Kirshner, by registered mail, the amount being his proportion of the assets of Hull Copper Company, as per records, for 1000 shares. Photostatic copies of register receipts were introduced in evidence; also copy of appeal bond in the justice court bearing defendant's signature, for purposes of comparison. There was also introduced in evidence some correspondence, being two letters from defendant to Clarence M. Davis, an attorney in New York who attempted to collect from defendant the amount claimed. These letters are somewhat lengthy and need not be here set out.

There is but one assignment of error, to-wit, that the court erred in giving an instruction to the jury directing a verdict for defendant. This assignment is developed under three headings in points and authorities. First, it is urged a motion for a directed verdict is in the nature of a demurrer to the evidence; that on hearing same the trial court should consider all the evidence and all inferences therefrom most favorable to the party against whom the motion is directed; that such motion should be sustained when, upon all the evidence, a verdict in favor of plaintiff against whom the motion was directed would have to be set aside.

Defendant makes no attempt to refute this plain statement of the law. We see no direct application of the rule to the facts in this case. The court, in directing the verdict, gave no reason for his

action. In such situation, if there is any reason for sustaining the court's ruling, it should be done. As shown by the record there are two reasons why the court legally could have directed the verdict as it did. In the first place the complaint charged fraud. It is the rule that parties alleging fraud must clearly establish it by proof. [Reger v. Reger, 316 Mo. 1310, 293 S. W. 414.] To prove fraud the evidence must be clear and convincing and the burden is on him who makes the charge. [Woolsey v. Wells, 281 S. W. 695.] It has been held an innocent misrepresentation by mistake will not furnish grounds for action for fraud. [Dunn v. White, 63 Mo. 181, 184.] In the consideration of this phase of the case it is necessary to refer again to the evidence.

The check under consideration was identified and introduced in evidence, and it is set out in the record. The record discloses there is nothing on the check, printed or written, which identifies the particular certificate of stock for which the check was a dividend. Defendant testified he held many certificates of the liquidated company and there was no way of telling to which certificate the check applied. There was no testimony showing, even by inference, that the defendant's testimony on this point was not true. It is undisputed. Defendant further testified that this is not disputed, that he personally received no part of the proceeds of the check; that the entire proceeds thereof were deposited to the credit of the Bankers Mortgage Company for whom defendant held the certificate as collateral, and that same was credited to the account of O. B. Stanton. There was no proof this was not true. There is no showing in the evidence that defendant did not possess an honest belief the check was the property of the mortgage company. Under such circumstances defendant may not be held to be guilty of fraud and deceit. [Kimber v. Young, 137 Fed. 744; Adams v. Barber, 157 Mo. App. 370; Snyder v. Stemmons, 151 Mo. App. 156.] Under the evidence of record we do not see how the trial court could have ruled otherwise: Had the cause been submitted to the jury and a verdict returned for plaintiff, the court would have been in duty bound to set the same aside. The testimony was such the trial court could well have considered plaintiff guilty of negligent delay. Plaintiff says he did nothing toward having the ownership of the stock transferred to him on the records of the Hull Copper Company; that it was not necessary to have it transferred in his name and it never was done. If plaintiff had had his stock transferred on the books of the Hull Company he would thereafter been the stockholder of record and the occasion for this suit would not have arisen. Ordinary diligence on the part of plaintiff would have obviated the mistake. We think the trial court was justified in directing the verdict for defendant because plaintiff failed to sustain the "laboring car" in proof of the alleged fraud.

In the argument presented in his brief plaintiff insists the Statute of Limitations pleaded in the answer did not begin to run until discovery of the fraud. In the light of the facts of record, this point is without merit. The rule urged by plaintiff applies where fraud is proved, but that is not the case herein. We have already ruled the testimony is such the trial court was justified in directing the verdict for defendant, fraud not being proved.

The action is bottomed on fraud. The answer pleads the Statute of Limitations in bar. The section upon which defendant bases his plea, as shown by his argument, is section 1317, Revised Statutes 1919, now section 862, Revised Statutes 1929, commonly called the five-year statute. The evidence shows suit was not begun for more than five years after the act complained of was committed. Plaintiff argues the only question involved in this appeal is the application of the Statute of Limitations. It is argued the cashing of the dividend check was accomplished secretly; that it was done either by or with the authority of defendant in whose name the stock stood on the records; that, as shown by the indorsements on the reverse side, the check contained the express recital that defendant owned said stock, had made no transfer of same and was entitled to the check.

It is defendant's contention, and we think a proper one, that if the act of the bookkeeper of the Bankers Mortgage Company in indorsing the check in issue was fraudulent, the fraud was complete at the time and the statute of limitations began to run. [State ex rel. v. Musick, 145 Mo. App. 33, 46; Snyder v. Stemmons, supra; Heisler v. Clymer, 179 Mo. App. 110.] In the Musick case it was held, in effect, if fraud were not concealed it would not succeed, but where it is accomplished, the rights of the parties are fixed and a right of action is complete. If plaintiff bestirs himself to inquire, he has time to investigate and institute action, and if both parties are quiescent, the Statute of Limitations runs its regular course. But if the wrongdoer adds to his original fraud, affirmative efforts to divert or mislead to prevent discovery, he imparts to his original act a continuing character by virtue of which he is deprived of the protection of the statute until the fraud is discovered. It has been held there must be some act to lull the plaintiff into inaction, or prevent him from discovering the fraud, but such acts of concealment must be pleaded and proved. [Smith v. Settle, 128 Mo. App. 379; State ex rel. v. Hawkins, 103 Mo. App. 251; Shelby County v. Bragg, 135 Mo. 291; Callan v. Callan, 175 Mo. 346, 74 S. W. 965.] Under the evidence the trial court was justified in ruling as he did. Plaintiff relies upon the well-established rule that a cause of action in fraud is deemed not to have accrued until discovery by plaintiff of the facts constituting the fraud, and the Statute of Limitations does not begin

to run until such discovery; but fraud must be shown if this rule is to apply. This rule is not controlling under the facts here presented.

We fail to find reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.