**Stephen H. GILMORE,**
**Plaintiff/Appellant,**

v.

**CHICAGO TITLE INSURANCE COMPANY, et. al., Defendants/Respondents.**

No. 66405.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 9, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 15, 1996.

Gregory G. Fenlon, Godfrey & Fenlon, St. Louis, for appellant.

Robert E. Jones, Jonathan A. Kessler, Clayton, Robert S. Rosenthal, T. Michael Ward, Brown & James, St. Louis, for respondents.

AHRENS, Judge.

Plaintiff, Stephen Gilmore, brought suit for monetary damages against defendants, Chippewa First Financial Bank ("Chippewa Bank"), Chicago Title Insurance Company ("Chicago Title"), and Phillips, McElyea, Walker and Carpenter, P.C. ("law firm"), alleging fraud in a transaction involving the purchase of real estate by plaintiff from Resort Development, Inc. ("Resort"). Plaintiff also filed a separate suit against Chicago Title for damages under a title insurance policy issued to plaintiff. The claims were consolidated at trial. Defendant Chippewa Bank counterclaimed for unpaid principal and interest on a note executed by plaintiff which was secured by a deed of trust on the property purchased. The claims of plaintiff and Chippewa Bank against each other were dismissed pursuant to a settlement agreement and are not part of this appeal. The trial court directed a verdict in favor of Chicago Title as to plaintiff's claim under the title insurance policy. The remainder of plaintiff's claims were tried by a jury which

returned a verdict in favor of defendants.[1] The court entered judgment on the verdict; and it is from that judgment and the court's grant of Chicago Title's motion for directed verdict which plaintiff appeals. We affirm.

Plaintiff, a lawyer, settled a substantial lawsuit in 1984 and 1985. Concerned about what to do with the fees received, plaintiff began exploring investment options. He first learned of Breckenridge–on–the–Lake, a real estate development at the Lake of the Ozarks, in March of 1985 from Thomas Zeisler. Mr. Zeisler referred him to Resort which was selling interests in the development. Plaintiff entered into a real estate sale contract with Resort on March 31, 1985. Plaintiff agreed to purchase Unit 1–6 for $110,000.00. Plaintiff made a $22,000.00 down payment on the property and financed the remainder of the purchase price with a note held by Chippewa Bank. The note was secured by a deed of trust on the property granted by plaintiff to Chippewa Bank.

Plaintiff alleges that sometime after this transaction occurred, defendants fraudulently substituted Unit 1–13 for Unit 1–6. In support of this allegation, plaintiff produced the originals of the note and deed of trust at trial. The originals of these documents, which appear to be altered, refer to Unit 1–13 as the property purchased by plaintiff; while plaintiff's copies, given to him when he signed the documents, refer to Unit 1–6. Plaintiff did not see the originals of these documents in the altered states until after suit was filed. Plaintiff testified he never received the warranty deed conveying property to him from Resort and he never received the title insurance policy covering that property. Both of these documents refer to Unit 1–13 rather than Unit 1–6. Plaintiff discovered the units had been switched "right before the filing of the lawsuit."

Plaintiff alleges Resort had sold Unit 1–6 to a third party before plaintiff executed the note and deed of trust on that unit, and consequently Resort did not own the unit at the time of closing. Plaintiff further alleges defendants conspired to defraud plaintiff of his purchase money by altering the instruments he had previously executed so that those documents referred to Unit 1–13 rather than 1–6. In addition, evidence was presented at trial that Unit 1–13 was owned by Dr. Victor Clever at the time Resort attempted to convey it to plaintiff. A warranty deed from Clever to Resort contained a forged grantor's signature. On October 18, 1993, Chicago Title obtained a quit claim deed from Clever and his wife pursuant to its duties under the title insurance policy it issued to plaintiff.

At trial, plaintiff testified he did not want to own Unit 1–13 because it was on the second floor. He stated he had chosen Unit 1–6 specifically because it was on the first floor; explaining his son had epilepsy and he wanted a first floor unit to prevent serious injury should his son fall as a result of the disease. However, plaintiff also testified he understood he would not necessarily be allowed to stay in the unit he purchased, but would have to stay in whatever unit was available. Plaintiff stayed at the resort several times but never stayed in Units 1–6 or 1–13. Plaintiff testified that in his opinion there was no difference in value between units 1–6 and 1–13 at the time of purchase or at the time of trial. Plaintiff considered the two units to be equally poor investments and said he believed the benefits of ownership were the same for both units.

■ Plaintiff's first point on appeal asserts error in the submission of Instruction No. 8, a statute of limitations affirmative defense instruction, to the jury.[2] The instruction reads:

---

1. "Defendants" refers to defendants Phillips, McElyea, Walker and Carpenter and Chicago Title Company.

2. Defendants argue that even if Instruction No. 8 is erroneous, the trial court's judgment should be affirmed because plaintiff failed to make a submissible case in that plaintiff presented no substantial evidence of damages. Although defendant makes a valid argument, the courts of our

state have instructed that when submissibility is not an issue on appeal, we may not consider it until after a favorable finding for appellant on one or more of appellant's alleged errors. *Grippe v. Momtazee*, 696 S.W.2d 797, 798–99 (Mo. banc 1985); *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626 (Mo.App.1993). Consequently, we will address plaintiff's points of error before reaching the issue of submissibility.

Your verdict must be for defendants if you believe plaintiff knew or should have known he was the owner of Unit 1–13 before December 10, 1985.

When the propriety of a jury instruction is at issue, the appellate court views the evidence in the light most favorable to the submission of the instruction. *International Minerals & Chemical Corp. v. Avon Products, Inc.*, 889 S.W.2d 111, 120 (Mo.App.1994).

Plaintiff contends Instruction No. 8 is erroneous in that it allows the jury to find the statute of limitations had run if plaintiff *should have known* he owned Unit 1–13 prior to December 10, 1985. Plaintiff argues defendants fraudulently concealed facts surrounding his cause of action and, consequently, the statute of limitations is subject to a "strict interpretation." Plaintiff contends a strict interpretation of the statute would toll its commencement until actual discovery of the fraud. For this reason, plaintiff argues, Instruction No. 8 is erroneous because it allows the jury to find the statute began running upon plaintiff's constructive knowledge of the fraud. We disagree.

The cases plaintiff cites as support for his contention that only actual knowledge commences the running of the statute of limitations for fraud, do not support his argument. Plaintiff cites the language of *Kansas City v. W.R. Grace & Co.*, which reads: "If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered." 778 S.W.2d 264, 273 (Mo.App.1989). Plaintiff interprets this language to require actual discovery before the statute of limitations begins to run. However, there is nothing in the opinion which demonstrates the court intended its use of the word "discovered" to mean actual rather than constructive knowledge. Moreover, the courts of this state have consistently interpreted the term "discovery" as used in § 516.120(5) RSMo,[3] the statute of limitations for fraud actions, to mean actual or constructive knowledge. *Burr v. National Life & Accident Insurance Co.*, 667 S.W.2d 5, 7 (Mo.App.1984); *Corley v. Jacobs*, 820 S.W.2d 668, 672 (Mo.App.1991); *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990). Section 516.120(5) provides

that the five year statute of limitations applies to:

An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

§ 516.120(5) RSMo 1994.

■ The statute of limitations begins to run at the time a cause of action in fraud accrues which is when plaintiff "discovered or in the exercise of due diligence, should have discovered the fraud." *Burr*, 667 S.W.2d at 7. Section 516.120(5) gives plaintiff ten years from the commission of the fraudulent act to discover the fraud. § 516.120(5). Should plaintiff fail to discover the fraud within this ten year period, the five year statute of limitations period begins to run at the expiration of the ten years. *Id.* Otherwise the limitations period commences at the time plaintiff discovered or should have discovered the fraud. *Id.* Our courts have placed a duty on plaintiffs to make inquiry to discover the facts surrounding the fraud and plaintiff is deemed to know of the fraud where plaintiff possesses the means of discovery. *Id.* We believe this is the better interpretation and would apply it in fraud cases when the defendant has acted to conceal the fraud.

■ Plaintiff asserts the substitution of Unit 1–13 for Unit 1–6 on the note and deed of trust after he had signed those documents was the fraudulent act; and the failure to return those documents to plaintiff constituted the fraudulent concealment. Fraudulent concealment of a cause of action in fraud acts as a continuation of the original fraudulent act. *Obermeyer v. Kirshner*, 225 Mo.App. 734, 38 S.W.2d 510, 514 (1931). Arguably the acts plaintiff complains of were all part of the same fraud and no concealment occurred. By nature, fraud involves some type of trick or concealment of the truth. Thus, it is difficult to distinguish between the two. We do not believe plaintiff's argument, that only actual discovery will begin the running of the statute in this instance, is supported by the cases cited. *See Kansas City v. W.R. Grace*

---

**3.** All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise noted.

& Co., 778 S.W.2d at 273; *Obermeyer v. Kirshner*, 38 S.W.2d at 514. The *Obermeyer* court required "discovery" before a cause of action in fraud accrues. *Id.* The court did not specify that only actual discovery would commence the limitations period. *Id.* As noted earlier, we follow the recent decisions of Missouri courts which define discovery as actual or constructive knowledge.

■ Additionally, we believe the reasoning employed by the General Assembly in limiting the time period of § 516.120(5) sheds light on plaintiff's argument. Section 516.280, which acts to toll the statute of limitations when a party's cause of action has been fraudulently concealed, was enacted well before the discovery period for section 516.120(5) was limited to a ten year period. The General Assembly was aware of § 516.280 when it amended § 516.120(5), adding the ten year limit. *See Anderson v. Dyer*, 456 S.W.2d 808, 813 (Mo.App.1970). Knowing that § 516.280 tolled applicable statutes of limitations indefinitely, the legislature chose to limit the statute of limitations for fraud to a fifteen year maximum. *Id.* We believe the General Assembly intended that the statute be tolled for only a limited amount of time. We have also concluded the legislature intended the word "discovery," as used in § 516.120(5), means actual or constructive knowledge of the fraud. For these reasons, we hold fraudulent concealment does not toll the statute of limitations for fraud beyond what is provided for in § 516.120(5) and does not require actual discovery of the fraud before the statute begins to run.

■ Plaintiff also contends under point one that Instruction No. 8 was erroneous because a fiduciary relationship existed between plaintiff and defendants and as a result of that relationship the statute of limitations commenced only upon actual knowledge of the fraud. While it is true that an escrow agreement establishes a fiduciary relationship among the parties to the agreement and it is equally true that when a fiduciary relationship exists, only actual discovery of the fraud serves to begin the limitations period; *Bakewell v. Heritage National Bank*, 890 S.W.2d 653, 659 (Mo.App.1994); *Burr*, 667 S.W.2d at 7; these rules of law are not applicable to the instant case.

■ Before actual knowledge of the fraud is required, plaintiff must be lulled into a false sense of security by a relationship of trust and confidence. *Burr*, 667 S.W.2d at 7. The fiduciary relationship of an escrow agent and the other parties to the agreement is much narrower in scope than other fiduciary relationships such as attorney/client. An escrow agent is bound by the terms of the escrow agreement and breaches the fiduciary duty only when the agent fails to follow those terms. *Bakewell*, 890 S.W.2d at 659. It is not the escrow agent's duty to discover fraud committed by one party upon another or to protect the parties from each other except as to the limited duties outlined by the agreement. The escrow relationship between plaintiff and defendants did not lull plaintiff into a false sense of security. The scope of this fiduciary relationship did not encompass a duty on the part of defendants to protect plaintiff from the acts of Resort. The fiduciary relationship involved here did not warrant tolling the statute of limitations until actual discovery. Therefore, Instruction No. 8 was properly submitted on this basis. Because we find no error in Instruction No. 8, we will not address defendant's argument that plaintiff has failed to make a submissible case on the damages element. Point one is denied.

In his second point, plaintiff argues Instruction No. 8 is erroneous because it is based upon plaintiff's ownership of Unit 1–13 prior to December 10, 1985. Plaintiff contends because the initial deed conveying Unit 1–13 to Resort Development was forged, the subsequent conveyance of the property to plaintiff from Resort was ineffective and plaintiff did not own Unit 1–13 as of December 10, 1985. Because there was no substantial evidence to support the instruction, plaintiff argues, it was erroneous. Defendants counter that plaintiff did not preserve this issue for appeal because he did not specifically object to Instruction No. 8 on this basis before the jury retired. We agree with defendants.

Rule 70.03 outlines the procedure necessary for objecting to instructions. It provides in part:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Although plaintiff objected to the submission of Instruction No. 8, he did so on the basis that it contained the phrase "or should have known." When construed in the most broad manner possible, plaintiff's objection made no mention of lack of evidence to support his ownership of Unit 1–13 prior to December 10, 1985. "Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *Seidel v. Gordon A. Gundaker Real Estate Co., Inc.,* 904 S.W.2d 357, 364 (Mo.App.1995). Plaintiff has preserved nothing for review on this point. Point two is denied.

Plaintiff's third point asserts the trial court erred in directing a verdict on Count II of plaintiff's petition in favor of defendant Chicago Title. Plaintiff contends: (1) there was no evidence the quit claim deed from Dr. Clever gave plaintiff clear title; and (2) whether the quit claim deed was recorded within a reasonable time was a question for the jury. Chicago Title contends it fulfilled its obligations under the title insurance policy by procuring clear title for plaintiff within a reasonable time after it was notified of the defect.

When reviewing a trial court's grant of a directed verdict in favor of a defendant, an appellate court views the evidence in the light most favorable to the plaintiff and disregards all evidence and inferences to the contrary to determine if plaintiff has made a submissible case. *Martin v. Pashia,* 892 S.W.2d 681, 683 (Mo.App.1994). A case should not be submitted to the jury unless all facts essential to the cause of action are predicated on legal and substantial evidence. *Id.* A directed verdict is proper only when

reasonable minds could not differ as to the proper verdict. *Id.*

Plaintiff contends he did not have title to Unit 1–13 until October 18, 1993, when the Clevers executed a quit claim deed to the property in his favor. He argues that this title may be clouded by any judgments or liens against Dr. Clever or his property which attached prior to October 18, 1993. However, plaintiff failed to present any evidence of the existence of such encumbrances. We find no substantial evidence to support plaintiff's claim that the Clever's quit claim deed of October 18, 1993, conveyed anything less than clear fee simple title.

Plaintiff also argues the issue of whether defendant Chicago Title cleared the defects in plaintiff's title within a reasonable time was a question for the jury. Plaintiff cites *Hammond v. Missouri Property Insurance Placement Facility,* 731 S.W.2d 360, 365 (Mo. App.1987), for the rule of law that "resolution of what is a reasonable time is a question of fact to be determined by the trier of fact." *Id. Hammond* is not on point with the instant case because the reasonable time discussed in *Hammond* is the reasonable time to make an offer, not the reasonable time to correct a title defect. *Id.* Chicago Title also cites to a case which is not directly on point with the instant case for the proposition that although the issue of reasonable time is ordinarily one for the jury, where all reasonable persons would conclude the defect was cleared within a reasonable time, it becomes a question of law for the courts. *Hayes v. Equitable Life Assurance Soc. of the United States,* 235 Mo.App. 1261, 150 S.W.2d 1113, 1118 (1941).

Plaintiff alleges he was damaged because Chicago Title failed to provide him with clear title to Unit 1–13. However, plaintiff's claim that the quit claim deed conveyed clouded title is based on pure speculation and conjecture as plaintiff has produced no evidence whatsoever of any liens or other encumbrances on his title to Unit 1–13. Damages are an essential element of a breach of contract cause of action, and as such, must be proven. *Rice v. West End Motors, Co.,* 905 S.W.2d 541, 542 (Mo.App. 1995). Because plaintiff has failed to present

substantial evidence of any damages he sustained as a result of Chicago Title's actions under the title insurance policy, he has failed to make a submissible case. The trial court's entry of judgment on the directed verdict is affirmed. Point three is denied.

Judgment affirmed.

CRANE, C.J., and CHARLES B. BLACKMAR, Senior Judge, concur.