HARDIN COUNTY, Kentucky d/b/a Hardin Memorial Hospital; Malinde Childress; Hope Warren; and Richard Kuchowicz, Appellants

v.

Bessie WILKERSON, Deceased; Charles Wilkerson, Executor of the Bessie Wilkerson Estate; and Cynthia Randolph Hall, R.N., Appellees

and

Cynthia Randolph Hall, R.N., Appellant

v.

Hardin County, Kentucky, d/b/a Hardin Memorial Hospital; Malinde Childress; Hope Warren; Richard Kuchowicz; Bessie Wilkerson, Deceased; and Charles Wilkerson, Executor of the Bessie Wilkerson Estate, Appellees.

Nos. 2005-SC-000183-DG, 2005-SC-000206-DG.

Supreme Court of Kentucky.

June 19, 2008.

Ken M. Howard, Hardin County Attorney, Elizabethtown, KY, Thomas Neal Kerrick, Thomas B. Russell, Scott Donald Laufenberg, Kerrick, Stivers & Coyle, Bowling Green, KY, Counsel for Hardin County, KY d/b/a Hardin Memorial Hospital; Malinde Childress; Hope Warren; and Richard Kuchowicz.

James T. Kelley, Elizabethtown, KY, Counsel for Bessie Wilkerson, Deceased; and Charles Wilkerson, Executor of the Bessie Wilkerson Estate.

Craig L. Johnson, Whonsetler & Johnson, Louisville, KY, Counsel for Cynthia Randolph Hall, R.N.

Opinion of the Court by Justice NOBLE.

The Appellants [1] succeeded at the trial court in having the Appellees' action dismissed for failure to revive their suit within one year of the death of the original plaintiff under KRS 395.278. The Court of Appeals held that that action was stayed and the one year statute of limitation in the revival statute was suspended by KRS 304.36-085 upon the insolvency and ordered liquidation of the Appellants' insurance company. This Court holds that KRS 304.36-085 does not stay an action subject to revival, nor does it suspend the statute of limitations in KRS 395.278.

## I. Background

Bessie Wilkerson fell and injured her hip while she was a patient at Hardin Memorial Hospital and was being cared for by several employees (Malinde Childress, Hope Warren, Richard Kuchowicz, and Cynthia Randolph Hall). Ms. Wilkerson subsequently filed a negligence claim against the hospital and several of its employees (collectively, the Appellants). On July 16, 2002, while the matter was still pending before the trial court, Ms. Wilkerson died. Her son, Charlie Wilkerson, was appointed as executor of her estate. On June 20, 2003, the Appellants' insurance company, Reciprocal of America Insurance Company, was declared insolvent by a Virginia state court and ordered into liquidation.

---

1. Cynthia Randolph Hall is named as an Appellee in case number 2005–SC–000183–DG, but she filed a separate motion for discretionary review, which was granted, making her the Appellant in case number 2005–SC–000206–DG. Hall was a defendant with Hardin County, Kentucky d/b/a Hardin Memorial Hospital, Malinde Childress, Hope Warren, and Richard Kuchowicz in the court below, and she is currently on the same side, for purpose of the issues presented in this case, as those parties. Thus, the term "Appellants" as used in this Opinion, refers to Hardin County, Kentucky d/b/a Hardin Memorial Hospital, Malinde Childress, Hope Warren, Richard Kuchowicz, and Cynthia Randolph Hall. The term "Appellees" refers only to Bessie Wilkerson, the decedent, and Charles Wilkerson, the Executor of the Bessie Wilkerson Estate.

The negligence lawsuit was not revived in the name of the estate within the twelve months following Ms. Wilkerson's death. On July 22, 2003, the Appellants moved to dismiss the suit because it had not been timely revived under KRS 395.278. The Appellees responded that the revival statute of limitations had been tolled for six months by KRS 304.36–085 upon the declaration of Reciprocal's insolvency. Nevertheless, the trial court dismissed the action, finding that it had not been timely revived.

A divided Court of Appeals panel held that the action was in active litigation prior to Ms. Wilkerson's death and was "pending" at the time Reciprocal became insolvent, and that the action was stayed for six months as a matter of law by KRS 304.36–085. As a result, the court ruled that the action could have been revived after the stay expired.

The Appellants sought and were granted discretionary review by this Court.

## II. Analysis

■ The issue in this appeal stems from an apparent tension between KRS 395.278,[2] the revival statute, and KRS 304.36–085,[3] which controls the staying of claims when Kentucky Insurance Guaranty Association (KIGA) steps in for an insolvent insurer undergoing liquidation. The Court of Appeals held that the stay statute

effected an automatic stay of the Appellees' action, which was "pending" despite the death of the original plaintiff, and that the stay suspended the running of the limitation period created by the revival statute. The Appellants argue that the Court of Appeals erred because the revival statute is a statute of limitation and must be strictly applied.

A simple way of looking at the inherent tension between two mandatory actions is to resort to definitions. KRS 304.36–085 states that all "proceedings" *shall* be stayed, subject to waiver, for at least six months. "Proceeding" is defined as "any application to a court of justice, however made, . . . for redress of injuries, for damages," or where "testimony can be compelled to be given" *Black's Law Dictionary* 1204 (6th ed.1990). Clearly the action below had the trappings of a proceeding. However, KRS 395.278 requires that an application to "revive" an action shall be made within one year of the death of a party. *Black's* defines "revival of action" as occurring when a personal representative substitutes for a deceased party so that the action is "brought to life again." *Id.* at 1320.

The history of KRS 395.278 is important because, "[a]t common law, when the plaintiff died the lawsuit died with him . . . ." *Daniel v. Fourth & Market, Inc.*, 445

2. The full text of KRS 395.278 reads: "An application to revive an action in the name of the representative or successor of a plaintiff, or against the representative or successor of a defendant, shall be made within one (1) year after the death of a deceased party."

3. The full text of KRS 304.36–085 reads:

All proceedings in which the insolvent insurer is a party or is obligated to defend a party in any court in this state shall, subject to waiver by the association in specific cases involving covered claims, be stayed for six (6) months and any additional time that may be deter-

mined by the court from the date that the insolvency is determined or an ancillary proceeding is instituted in the state, whichever is later, to permit proper defense by the association of all pending causes of action. As to covered claims arising from a judgment under decision, verdict, or finding based on the default of the insolvent insurer or its failure to defend an insured, the association, either on its own behalf or on behalf of an insured, may apply to have the judgment, order, decision, verdict, or finding vacated or set aside and shall be permitted to defend the claim on its merits.

S.W.2d 699, 701 (Ky.1968); *see also id.* at 700 ("There was no authority for survival and revival of a personal injury suit in Kentucky until it was legislated. . . ."); *Hammons v. Tremco, Inc.,* 887 S.W.2d 336, 337 (Ky.1994) ("At common law, all pending personal actions permanently abated upon the death of a sole plaintiff or defendant."); *Kennedy v. McAfee's Ex'x,* 11 Ky. (1 Litt.) 169 (1822) ("That, upon common law principles, the action could not be revived in the name of the executrix, is perfectly obvious; for the cause of action is founded on a tort, and wherever the declaration imputes a tort, done either to the person or property of another, and the plea must be not guilty, the rule at common law was, *actio personalis moritur cum persona.*"). The revival statute altered this practice, allowing the dead (or abated) suit to be revived. Nevertheless, the action in the name of the decedent is dead and cannot be prosecuted; it remains on the docket only as a placeholder for the revived suit in the name of the personal representative of the estate.

Thus, a simplistic analysis to the relationship between the statutes is that an action that is abated by the death of a party cannot be stayed by the action of another statute. The abated action is not a "proceeding" unless it is revived. Thus, only upon revival could the stay be enforceable. The question of whether the limitation period controls over the stay then is simple: since only upon revival is the limitation period tolled, thereby allowing the force of the stay to come into effect, it is inescapable that the revival statute controls. A review of the case law and the various arguments put forward demonstrates why this is the appropriate conclusion.

Since its inception, and through its various incarnations, the revival statute has consistently been read as one of limitation.

*See Hammons,* 887 S.W.2d at 338 ("This provision operates as a statute of limitations"); *Daniel,* 445 S.W.2d at 701 ("[It is] a statute of limitation and not a law 'relating to pleading, practice and procedure' within the meaning of KRS 447.151 and 447.156."); *Snyder v. Snyder,* 769 S.W.2d 70, 72 (Ky.App.1989) ("We hold that KRS 395.278, relating to the reviver of an action, is a statute of limitation, rather than a statute relating to pleading, practice or procedure, and the time limit within this section is mandatory and not discretionary, thereby preventing a party or the court from extending such time via CR 6.02."); *Mitchell v. Money,* 602 S.W.2d 687, 688 (Ky.App.1980) ("Within this jurisdiction, it is a well-recognized rule of law that any statute relating to the revivor of an action is a statute of limitation, rather than a statute relating to pleading, practice, or procedure.").

▮ Moreover, the revival statute "has always been strictly construed." *Daniel,* 445 S.W.2d at 701. "[T]he period set forth in the statute is mandatory and not subject to enlargement." *Hammons,* 887 S.W.2d at 338.

However, this alone does not fully answer whether the stay provision of the Kentucky Insurance Guaranty Association Act can have *any* effect on the revival limitation period, which is an issue of first impression in Kentucky. This Court's review of foreign cases applying analogous provisions has revealed only two states to have addressed the issue, and there is a split of opinion between them. *Compare White v. Haydel,* 593 So.2d 421, 422 (La. Ct.App.1991) (holding that insurance guarantee association stay statute did not suspend limitation period because action was not pending when stay was entered), *with Skrbic v. QCRC Assoc. Corp.,* 761 So.2d 349, 351 (Fla.Ct.App.2000) (allowing insur-

ance guarantee association stay statute to suspend statute of limitations).

Nevertheless, reading this statute as suspending the revival limitation period is troubling in many respects. To begin with, the stay statute requires that "proceedings" be stayed "to permit proper defense by the association [KIGA] of all pending causes of action." KRS 304.36–085. But the word "proceeding," as defined above, implies that the action can go forward, which is impossible, absent revival, once a party has died. And an action cannot be "pending" after the death of a party unless it has already been revived because the action is "dead" or at least in "limbo." As summed up by the Court in *Daniel:*

> At common law, when the plaintiff died the lawsuit died with him, and even under the early survival statute it was necessary to have process on a bill of revivor. We cite this circumstance to illustrate the point that *revivor is not a simple matter of straightening up the record of a lawsuit.*
>
> A personal representative does not automatically succeed to the decedent's rights and status as a litigant. He is not a party to the suit, but is permitted by the statutes to raise it from limbo and become a party to it. *In this sense a revivor is much in the nature of a new action as distinguished from an act done during the course of a proceeding*
> . . . .

445 S.W.2d at 701 (citations omitted, emphasis added). Thus, even with the advent of the revival statute, the action is treated as having died with the decedent and may, like Lazurus, if only for one year, be brought back from the dead by the personal representative of the decedent: "In effect, the courts in this and other jurisdictions have held that a personal representative does not automatically succeed to the rights and status of a decedent. Rather, he is permitted, by an act of the legislature, *to revive an action which dies with the decedent.*" *Mitchell,* 602 S.W.2d at 688 (emphasis added). Kentucky's historic treatment of its revival statute, thus, weighs in favor of following Louisiana's rule.

Even assuming the KIGA stay statute applies to actions where a party has died, the language of the statute is not self-executing and therefore does not automatically stay the proceeding. Rather, the statute states that proceedings "shall . . . be stayed." This use of "shall" imposes a mandatory duty on a court to stay proceedings, but indicates that an affirmative act by a court is still required to effect the stay. The obvious response is that, because "shall" makes the stay mandatory, a holding that the stay is not automatic would render the statute pointless. Appellee makes this argument to show that the KIGA stay statute should be self-executing.

However, a comparison of that statute to other stay laws—which are self-executing—undermines this argument. The best example of a self-executing stay is in the Federal Bankruptcy Code, which includes a section titled "Automatic Stay." 11 U.S.C. § 362. That provision states that a debtor's filing of a bankruptcy petition—the act of filing itself—"operates as a stay" against most actions against the debtor. Essentially, the automatic stay is self-executing upon the filing of the petition, and no court action is required. Moreover, the bankruptcy stay expressly applies to the *commencement* (and continuation) of actions against the debtor. This differs significantly from KRS 304.36–085, the language of which, as noted above, requires some affirmative action by a court and only applies to pending actions (rather than not-yet-pending actions).

Even if KRS 304.36–085 is read as analogous to 11 U.S.C. § 362, several considerations weigh against reading it as tolling the revival limitation period. First of all, while the Bankruptcy Code does have an effect on statutes of limitation, it employs 11 U.S.C. § 108(c), a statute separate from the automatic stay provision to do so. Under that section, a nonbankruptcy statute of limitation that "has not expired before the date of the filing of the petition . . . does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362. . . ." 11 U.S.C. § 108(c); *see also Raikes v. Langford,* 701 S.W.2d 142, 145 (Ky.App.1985) (recognizing that § 108(c) is a savings feature for statutes of limitations that have not expired before the filing of the petition). However, while "Section 108(c) of the Bankruptcy Code *extends* a creditor's right to bring an action through . . . 30 days after the automatic stay expires . . . or is lifted by order of court[,] Section 108 does not in and of itself *suspend* the running of a statute of limitations." *In re Baird,* 63 B.R. 60, 63 (Bankr. W.D.Ky.1986). Or, stated more bluntly: "[Section] 108(c) does not create a separate tolling provision. . . . [F]or the time period to be suspended, other federal or state law must mandate it and then be incorporated through § 108(c). Otherwise, a party must file suit within the thirty-day grace period after the end of the stay." *Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 297 (5th Cir.1995); *see also Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993) ("[B]y its terms § 108(c) does not provide for tolling of any externally imposed time bars, such as those found in . . . statutes of limitations. The bankruptcy section only calls for applicable time deadlines to be extended for 30 days

after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date. The reference in § 108(c)(1) to "suspension" of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes.").

As those cases demonstrate, not even 11 U.S.C. § 362, the statute most analogous to KRS 304.36–085, suspends the running of a statute of limitation. A separate savings statute is required to do so, and no such separate statute appears in the Kentucky Revised Statutes. So, even under a best-case-interpretation of KRS 304.36–085 (as creating an automatic stay), it can have no effect on the statute of limitation absent a separate, coordinate savings statute.

Finally, allowing KRS 304.36–085 to be used to suspend the running of a statute of limitation goes against its stated purpose. Admittedly, the Kentucky Insurance Guaranty Association Act includes a general statement of purpose, which in relevant part aims to provide protection to insureds and persons with claims against those insureds, *see* KRS 304.36–020, and a statement that the general statement of purpose "shall constitute an aid and guide to interpretation." KRS 304.36–040. But this general purpose of the KIGA Act cannot trump the specific purpose of the stay provision, which is "to permit proper *defense by the association* of all pending causes of action." KRS 304.36–085 (emphasis added). The stay exists only as a tool for KIGA to use as it cleans up the mess left by an insolvent insurer. To allow insureds and other claimants to use the stay against KIGA to extend or suspend statutes of limitation significantly reduces the ability of KIGA to defend itself. This turns the statute from a shield for

KIGA to a sword for insureds and other claimants, useful only to gut completely the purpose of the statute.

## III. Conclusion

For the KRS 304.36–085 stay provision to come into effect, there must be a live, pending action to be defended by KIGA. The statute does not suspend or toll the running of a statute of limitation. Where a party to an action that may fall under KRS 304.36–085 has died, and the action had not been revived under KRS 395.278, there is no live, pending action for the stay to affect. This, of course, means that a dead action required to be defended by an insolvent insurer (and therefore KIGA) may be revived, even if a stay under KRS 304.36–085 is in place. However, the Appellees' action in this case was not revived within one year of the death of the decedent, Bessie Wilkerson. Because the one year in KRS 395.278 is a period of limitation, to be strictly construed, the trial court properly dismissed the action.

For the forgoing reasons, the Court of Appeals is reversed and the Hardin Circuit Court's order of dismissal is reinstated.

LAMBERT, C.J.; ABRAMSON and SCHRODER, JJ., concur.

SCOTT, J., dissents by separate opinion in which CUNNINGHAM, J., joins.
MINTON, J., not sitting.

SCOTT, Justice, dissenting.

I respectfully dissent from the majority above; as I believe that the underlying action was in active litigation prior to Ms. Wilkerson's death and was, therefore, "pending" by virtue of the revival statute of KRS 395.278. Accordingly, KRS 304.36–085 automatically stayed the revival limitations period of KRS 395.278 when the original insurer became insolvent and provided an additional six months within which the plaintiff's successor, here, Charles Wilkerson, could revive the medical malpractice action. Thus, Appellees' action was improperly dismissed.

The law regards that as done which ought to have been done; and, if it is finally held liable, those persons who would have gotten the fund if the claim had been paid off when the right attached are not affected by the fact that they did not survive the final result of the litigation.

*Thomas' Adm'r v. Maysville Gas Co.,* 112 Ky. 569, 23 Ky. L. Rptr. 1879, 66 S.W. 398, 400(1902).

The majority is of the opinion that the death of a plaintiff in a lawsuit serves as an absolute abatement to that suit's status as a proceeding until revival is effectuated. However, I cannot join in this conclusion, as it appears to me that this is the very quandary which the revival statute was instituted to address. Certainly, it is entirely reasonable to conclude that the impetus for the enactment of KRS 395.278 was to eliminate the archaic and overly-harsh presumption that a proceeding died with its plaintiff, or *actio personalis moritur cum persona.* It stands to reason, then, that the General Assembly, as a matter of policy, intended to address the resulting injustice in allowing a tortfeasor to avoid liability for his or her wrongdoing simply by virtue of the death of the opposing party.

While the revival statute does not affect an automatic *personal* succession of a decedent's representative to a lawsuit, it does, through a legal reality of statutory creation, permit the lawsuit itself—absent a personal holder of the lawsuit—to survive as a live action in its stead. And although this may be contrary to the common law notions which the majority endorses, the law is replete with examples wherein staid principles of common law

are altered by statutory introduction. *See, e.g.* KRS 381.216 (wait and see statute instituted a more practical approach to the much maligned legal fiction of the rule against perpetuities stating, "[i]n determining whether an interest would violate the rule against perpetuities the period of perpetuities shall be measured by actual rather than possible events"). The present instance is inherently analogous in that it operates to insert a more fundamental level of practicality to what is otherwise an abstract and purely legal construction which leads to unjust results.

Thus, I would find that KRS 395.278 operates to maintain an action's status as a live proceeding so long as it is revived within the limitations period of that statute; or simply put, the revival statute allows what would otherwise be a dead action to exist as a live and pending proceeding until the applicable limitations period expires.

Contrary to the majority's reasoning, KRS 304.36–085 should be construed to suspend the running of the one year limitations period of KRS 395.278 upon a reciprocal's insolvency. The mandatory language of KRS 304.36–085 conveys definite meaning. Accordingly, because the revival statute maintains a suit's status as a live and pending proceeding, it therefore falls automatically within the ambit of KRS 304.36–085. The force of the stay controls over the limitations period of the revival statute. There is no discretionary language in the statute which would otherwise indicate that a separate motion or some other action is required to render the stay enforceable. Thus, because the statute plainly operates to institute a mandatory stay for a minimum of six months, it is difficult to assert that the statute somehow does not mean what it says: stay means stay.

Moreover, this Court has historically construed statutes in such a manner as to save a claim. *See Dollar General Stores, Ltd. v. Smith,* 237 S.W.3d 162, 164–165 (Ky.2007) (interpreting the jurisdiction savings statute, KRS 413.270, as applicable to venue under the premise that the statute should be interpreted broadly to achieve its remedial purpose of saving claims); *see also Lemmons v. Ransom,* 670 S.W.2d 478, 479 (Ky.1984) (extending the savings statute, KRS 413.170, as applicable to tort liability actions). If the legislature meant something other than the plain reading of the statute, then it is well within the scope of their authority to change the statute. However, I do not think that this Court should stretch to ascribe a meaning to such language which is both contrary to logic and to its clear intent.

The majority concludes that the revival statute must be strictly construed and is not subject to enlargement. *See Daniel v. Fourth & Market, Inc.,* 445 S.W.2d 699, 701 (Ky.1968) (strictly construing former KRS 395.277). While it may be a correct statement as to the current status of the law in this state to say that the limitations period may not be enlarged, it is not an accurate assessment of the nature of this case. Appellant, here, does not request that the limitations period be enlarged, but rather that the limitations period be *tolled* by virtue of the stay provision of KRS 304.36–085.

Further, *Daniel,* upon which the majority heavily leans, is distinguishable from the present instance. In *Daniel,* the principal issue before the Court centered on whether the limitations period of the revival statute, under former KRS 395.277, was a matter of procedure—as opposed to a matter of substance—and therefore subject to discretionary enlargement, pursuant to the Court's rule-making authority

and CR 6.02. 445 S.W.2d at 700–701. The Court ruled that the limitations period was not subject to discretionary enlargement under CR 6.02, but did, however, recognize that under CR 25.01 the Court may intervene upon equitable considerations. *Id.* at 701.

Thus, while the limitations period of KRS 395.278 is not subject to discretionary enlargement or enforcement, revival beyond the expiration of the limitations period is not without precedent in the Commonwealth. Indeed, CR 25.01(1) recognizes that if motion for revival is not made within the limitations period, the action "may" be dismissed as to the deceased party. And while we noted again in *Hammons v. Tremco, Inc.,* 887 S.W.2d 336, 338 (Ky.1994), that this language did not signify discretionary dismissal, we reiterated, however, that it does provide for exceptions to dismissal when rights have been lost, such as by waiver, estoppel, or consent. *See also Snyder v. Snyder,* 769 S.W.2d 70 (Ky.App.1989).

In *Harris v. Jackson,* 192 S.W.3d 297, 307 (Ky.2006), this Court held that a party could be estopped from asserting the statute of limitations defense of KRS 395.278 to the party's revival action when the party's attorney failed to disclose that the party had died during the pendency of the lawsuit. In *Harris,* we reasoned that the death of the insured party (and thus, under the doctrine of virtual representation, the insurer) changed the identity of the defendant and therefore changed the procedures necessary to finish the lawsuit. *Id.* at 306. As such, we concluded that estoppel was applicable to KRS 395.278 to avoid resulting injustice, and held that the insurer was estopped from asserting a statute of limitations defense against the Appellee's claim of revivor, despite the fact that such claim was made after the one year limitations period had passed.

The present instance, though somewhat factually dissimilar from the preceding, is analogous. Although there was no affirmative misrepresentation or omission by any party here, we are presented with a situation where, by virtue of the insolvency and ordered liquidation of the original insurer and the death of the original plaintiff, circumstances were brought into existence necessitating additional considerations of timeliness. Because insolvency changed the identity of the insurer, KIGA became the substituted party. Accordingly, KRS 304.36–085 became applicable, effectuating a stay upon the original limitations period. Here, we should acknowledge that KRS 304.36–085 suspends the running of the revival limitations period similar to the manner in which we have recognized the effect of other provisions—such as CR 25.01(1)—upon the running of the statute.

In the present instance, KRS 304.36–085 automatically tolled, by virtue of its mandatory language, the revival limitations period of KRS 395.278 and provided, at minimum, an additional six months within which the suit could be revived. I find no reason why KRS 304.36–085 should not be construed to affect a stay upon the revival limitations period. Therefore, I would affirm the Court of Appeals.

CUNNINGHAM, J., joins this dissent.